THE CITY OF PERRY, *a Municipal Corporation,* WILL T. PLUMMER, MIKE R. CONWAY, *County Treasurer Noble County, Oklahoma Territory,* AND W. B. WHEELER V. DAVIS AND YOUNGER, A. A. DAVIS, ETHAN ALLEN, R. R. EDWARDS, IDA M. SMITH, G. M. BARNETT, R. PRESSLER, S. H. HARRIS, A. W. TUCKER, S. P. STRAHN, ED. MOSSMAN, EVA CROSBY, ALICE MARTIN, ED. MORTON, ED WALLERSTEDT, MRS. Z. H. MCCUBBINS, W. E. JOHNSON, P. J. PITCHFORD, C. W. RANSOM, W. M. BOWLES, CHURCHILL MCCUBBIN, BERT PRATT, B. REED, U. S TUBBS, MARY KELLEY, E. D. DAVIS, MARY E. LITTELL AND CHAS. DENNIS.

(Filed January 8, 1907.)

1. **MUNICIPAL CORPORATIONS—Building Sewer Systems—Powers.** Under article one (1), chapter six (6) of the session laws of 1903, entitled "An Act Authorizing Municipal Corporations to Extend or Build General Sewer Systems and to Levy Special Assessments of Taxes to Pay for Same," the mayor and city council are authorized to establish a general sewer system and proceed with the construction of district sewers when deemed necessary, without a petition by a majority of the resident property holders residing in the sewer district.

2. **SAME—Same—Statutes Construed.** Article one (1), chapter six

(6) of the session laws of 1903, under which the tax for the construction of the sewer in this case was levied is not unconstitutional by reason of th fact that it fails to provide for notice of the construction of the sewer to property holders, other than the notice imparted by the passing of the ordinance and other proceedings designated in the act and to give them an opportunity to be heard, before the construction of said sewer.

3. SAME—Same—Constitutionality of Statute. Under the act of 1903, providing that when a district sewer is completed the whole cost shall be assessed as a special tax against the lots in the district respectively, without regard to improvements, in the proportion which their respective areas bear to the areas of the whole district is not unconstituaional as a deprivation of property without due process of law.

(Syllabus by the Court.)

*Error from the District Court of Noble County; before Bayard T. Hainer, Trial Judge*

*McGuire & Hepburn, A. M. Whiteside, Charles R. Bostick, Co. Atty, Dale & Bierer* and *Benj. F. Hegler, Jr.* for plaintiffs in error.

*W. M. Bowles, S. H. Harris, C. W. Ransom* and *Ethan Allen* for defendants in error.

### STATEMENT OF FACTS.

This action was brought by defendants in error in the district court of Noble county under the provisions of article one (1), chapter six (6) of the session laws of 1903, to enjoin the city of Perry from collecting a tax levied by the city to pay for the construction of a district sewer in sewer district number one (1). Mike Conway, as county treasurer, was made a party defendant to prevent the collection of the tax. Will T. Plummer was the contractor who constructed the sewer for which the tax was levied, and W. B. Wheeler is the owner of the warrants issued for the

amount of the taxes levied for the construction of said sewer, and remaining unpaid.   On January 23rd, 1905, a temporary restraining order was issued out of the district court of Noble county, and on January 30th a temporary injunction was granted restraining the collection of the tax.   On February 3rd, the defendants, Conway and Plummer, filed a demurrer upon two grounds viz: First, that the petition failed to state facts sufficient to constitute a cause of action: Second, that said action was barred by the statute of limitations.   On February 6th, the demurrer was overruled, and W. B. Wheeler was granted permission to intervene.   On May 29th, 1905, upon the final hearing of the cause, the court found the issues in favor of the plaintiff and against the defendants, and issued an order making the temporary injunction, therefore granted, permanent, and perpetually enjoining defendants, the said mayor and councilmen of the city of Perry, from making any assessment or levy of taxes against the property of plaintiffs for the payment of the special sewer tax warrants, and the said W. T. Plummer and W. B. Wheeler were perpetually enjoined and restrained from collecting such tax warrants, or in any manner attempting to collect the special tax levied on property of plaintiffs for the construction of said sewer.   On the same day a motion for a new trial was overruled, exceptions allowed, and case brought here by petition in error and case made for review.

In the petition, plaintiffs alleged, substantially, that they were all property owners in sewer district number one (1.) in which the sewer was constructed in the city of Perry, giving a description of their individual property, located

in said sewer district, and the amount of the special sewer tax assessed against said property; that the city of Perry was a municipal corporation duly organized under and by virtue of the laws of the Territory of Oklahoma; that the defendant, Mike R. Conway, was the duly elected and acting treasurer of Noble county, Oklahoma Territory; that Will T. Plummer was the contractor and the person who constructed the sewer; that on or about the 4th day of August, 1903, the defendant, the city of Perry, by ordinance number four hundred forty-two (442), established sewer district number one (1), including in said sewer district all the blocks numbered seven (7), eight (8) and nine (9) in the original townsite of the city of Perry; and that after establishing said sewer district the said city of Perry by its council caused to be located and constructed through said district a district sewer; that a contract for the construction thereof, was let to one Will T. Plummer, defendant herein; and that when said sewer was completed, the said city of Perry by its council proceeded to levy and assess a special tax by ordinance number four hundred fifty-seven (457) against the property abutting along and against said sewer in the amounts and against the property shown by the schedule attached, all of said property so assessed being in said sewer district number one (1) ; and, thereafter, on the —————— day of December, 1903, the said city of Perry, by its mayor and council proceeded to issue tax warrants against said lots and pieces of ground in said district where the assessments had not been paid, and delivered said warrants to the contractor, Will T. Plummer, the said warrants so issued being payable in three (3) install-

ments; and that the county clerk, without authority, spread upon the tax rolls of said county for the year 1904, a tax against the property in said district to cover the first installment, and that said tax rolls were turned over to the treasurer of Noble county, Oklahoma Territory; and that said treasurer was attempting to collect the said taxes so levied as aforesaid; that said taxes were illegal and void, and should not be collected, or attempted to be collected by said treasurer for the following reasons:

First, that said sewer was established and located and constructed without any petition being presented to the mayor and council by a majority of the property owners within said sewer district number one (1) praying for, or requesting the construction of said sewer, and any and all action taken by said city in causing the construction of said sewer was without authority and void.

Second, that the statute under which said tax was levied and assessed is unconstitutional and void for the reason that it does not provide for any notice to the owners of the property so taxed or for any opportunity for them to be heard with reference to said tax, and no notice of any kind, in fact, was given:

Third, said statute is further unconstitutional and void for the reason that it does not provide for the levying of the tax with reference to the benefit that might result to the owners of property taxed from the construction of adjacent improvements:

Fourth, that the statute under which said sewer was established and constructed provides that the council shall

cause a complete estimate to be made of the costs of said sewer before any action shall be taken thereon by the mayor and city council, and that no sufficient estimate as required by the statutes was submitted prior to the construction of the said sewer, that the estimate submitted is too general in its terms and vague and indefinite, and for this reason is insufficient as an estimate of probable cost:

Fifth, that the contract for the construction of said sewer was let for a greater sum than the estimated cost as submitted by the engineer who had the work of constructing said sewer in charge, and who was employed by the mayor and council to make and prepare profiles, maps and estimates of the costs of constructing said sewer, that by reason of the fact that said contract price was greater in amount than the estimates furnished by the engineer, all the work and labor performed under said contract was illegal and void:

Sixth, that no levy for the special sewer tax aforesaid, was ever made by the mayor and council of the city of Perry, and certified to the county clerk of Noble county as required by law, and said county clerk had no authority to spread the said special sewer tax upon the tax rolls of said Noble county.·

Further pleading, the plaintiffs alleged that they were willing to pay all the legal taxes assessed against their said properities for the ycar 1904, and had tendered an amount ·sufficient to pay said legal taxes, less the tax levied to pay said sewer warrants, but that the county treasurer refused to accept said tender; that they were without a speedy and

adequate remedy at law, and if said treasurer was allowed to continue to collect said illegal taxes the plaintiffs would be irreparably damaged and injured thereby; that the special sewer tax assessed against their property was illegal and not a proper and legitimate tax imposed upon the plaintiffs, and creates a cloud upon the title of their property, and each individual property owner, that the defendant, M. R. Conway, treasurer aforesaid, was proceeding to collect said illegal and void taxes by virtue of the same appearing on the tax rolls of the county, and would advertise and sell the property of plaintiffs herein, unless enjoined by the district court of Noble county.

Wherefore, plaintiffs asked for a temporary restraining order restraining and enjoining the said defendant M. R. Conway, from collecting or attempting to collect the taxes aforesaid; and that a like order issue to the city of Perry restraining it from levying or attempting to levy a further installment of taxes to pay said sewer warrants; and that the court issue an order restraining the said Plummer, his transferees or assigns from attempting to proceed in any way with the collection of the said special sewer tax warrants by virtue of the law relating to the special assessments; and that upon the further hearing of said cause a permanent injunction be adjudged, forever restraining and enjoining the collection of the special assessment.

The defendants, the city of Perry, and Mike R. Conway, for their answer entered a general denial, excepting facts admitted, and, substantially, alleged that the city of Perry established sewer district number one (1) by an ordinance duly passed by the city council, and approved by the mayor

of said city; and that said district comprised blocks seven
(7), eight (8) and nine (9), in the original townsite of
Perry, and block sixty-seven (67) and sixty-eight (68) in
north and west Perry, an addition to said city; that, there-
after, a sewer was constructed in said sewer district and
the costs of the same were levied and assessed against the
property abutting on said sewer in manner and form as
provided by law; that the mayor and city council of the city
of Perry by ordinance duly passed and approved on the ——
day of December, 1903, levied and assessed a special tax
against the lots abutting on said sewer, the same being all
the lots included in said sewer district number one (1); and
that said ordinance was duly published in the official paper
of said city, and of general circulation in said city of Perry,
and which tax so levied and assessed was for paying the
expenses for the construction of said sewer; and that the
action brought by the plaintiffs for the purpose of setting
aside and invalidating the levy and assessment was insti-
tuted in the district court of Noble county, Oklahoma Ter-
ritory on the 19th day of January, 1905, and more than
one year after said special tax was levied and assessed against
the property of said plaintiffs and that said action was,
therefore, barred under the provisions of section nine (9),
chapter six (6) of the session laws of the Territory of Okla-
homa, 1903, and asked for a dismissal of suit at costs of
plaintiffs.

The answer of defendant, Will T. Plummer, in addi-
tion to a general denial and the general allegations set forth
in the answer of the city of Perry, material to his case, sub-
stantially alleged that he was the contractor, and com-

menced the construction of the sewer in sewer district number one (1) in good faith, and on the assumption that all the proceedings were valid; and that the plaintiffs and each of them knew that he, the said Will T. Plummer, was acting in good faith, and on the assumption that all of the proceedings had and done in the matter of the construction of said sewer were regular and valid; and that the plaintiffs and each of them acquiesced in the transaction and stood by without objection while he expended his money on said sewer to the benefit of the plaintiffs; and that by reason of their laches they were estopped to deny the authority by which said improvements were made and to defeat the assessments against said property.

The defendant, W. B. Wheeler, in his answer, in addition to a general denial and the general allegations set forth in the answer of the city of Perry and Will T. Plummer, substantially alleged that the mayor and city council of the city of Perry by ordinance duly and legally passed and approved on the ——— of December, 1903, levied and assessed a special tax against the lots abutting on said sewer the same being all of the lots included in sewer district number one (1) which ordinance was duly published in the official paper of said city, and which levy and assessment was for paying the expenses for the construction of said sewer; and, that, thereafter, in accordance with law, the mayor and city council of the city of Perry issued to one Will T. Plummer the contractor, and one of the defendants herein, in payment of the construction of the sewer mentioned in plaintiffs' petition, certain special tax warrants against the lots and parcels of ground in said sewer dis-

trict number one (1) ; and, that thereafter, to wit, on the ——day of ——, 1904, and before the filing of this suit the defendant, W. B. Wheeler, purchased in good faith without notice, and for a valuable consideration, the said tax warrants so issued as aforesaid in payment of the construction of the sewer mentioned in plaintiffs' petition; and that he was at the time the owner and holder of said tax warrants.

Upon the hearing it was admitted that the city of Perry contained a population of more than one thousand (1,000) ; that the sewer district number one (1) is the only sewer in the city of Perry constructed by the city; and that no petition was ever filed by the property holders residing in said sewer district.

Opinion of the court by

Garber, J.: The issues to be determined in this controversy were presented by the original pleadings in the court below, and will be considered here in the order therein stated.

Article one (1) of chapter six (6) of the session laws of 1903, under which the city council proceeded in the construction of the sewer provides:

"That in municipal corporations having a *bona fide* population of not less than one thousand persons, the mayor and councilmen shall have power to cause a general sewer system to be established, which shall be composed of three classes of sewers, to wit, public, district and private sewers.

"Section 2. Public sewers shall be established along the principal courses of drainage, at such points, to such extent, of such dimensions and under such regulations as

may be provided by ordinance, and these may be extensions or branches of sewers already constructed or entirely new thoughout, as may be deemed expedient.

"Section 3. District sewers shall be established within the limits of the districts, to be prescribed by ordinance, and shall connect with public sewers or other district sewers, or with the natural course of drainage, as each case may be. Such districts may be subdivided, enlarged or changed by ordinance at any time previous to the construction of the sewer therein; and more than one district sewer may be laid in a sewer district if deemed necessary by the council for sanitary or other purposes. The council shall cause sewers to be constructed in each district whenever a majority of the property holders, residents therein, shall petition therefor, and said sewers shall be of such dimensions and materials as may be prescribed by ordinance and may be changed, enlarged or extended, and shall have all the necessary laterals, inlets, catchbasins, man-holes and other appurtenances: Provided, however, that the property owners shall have the right to construct the lateral sewers abutting their own property under the direction and supervision of the city engineer and at such time as the city engineer may prescribe. The cost of such district sewers shall be assessed and collected as hereinafter provided; but the city shall incur no liability for building district sewers, except when the city is the owner of a lot within the district and in that case the city shall be liable for the costs of said sewers in the same manner as other property owners within the district.

"Section 6. Whenever the mayor and councilmen shall deem such district sewers necessary, as provided for in section three. of this act, they may proceed with such work, and shall cause to be prepared sections, profiles and specifications for the work, together with the complete estimate of

the costs. And the mayor and councilmen shall have the power to adopt any material or method for the construction of such sewers and to have such plans prepared in accordance with its directions as to the kind of material used. Upon the completion of the plans and specifications and their adoption by the mayor and councilmen, they shall advertise for sealed bids for the performance of such work, for at least ten days if published in a daily newspaper, or at least two weeks if published in a weekly newspaper, which paper shall be of general circulation in the city, and which notice may contain any reasonable conditions to be imposed by the mayor and councilmen with reference to the letting of such contract, and may require the giving of a good and sufficient bond for the faithful execution of the work, and for the protection of the city, and all property owners against any loss or damage by the negligent execution of such work. At the time and place specified in the notice, the mayor and councilmen shall award the contract to the lowest responsible bidder for the work, which contract shall in no case exceed the estimated cost submitted with the plans and specifications and shall be subject to the right of the mayor and councilmen to reject any and all bids and to re-advertise for other bids when none of the same are, in their judgment, satisfactory: Provided, that where a majority of the property owners in any block, petition the mayor and councilmen for a lateral sewer through or in such block, the advertising for bids shall not be necessary, but the mayor and councilmen may cause such improvements to be made without such notice."

It is insisted that in order to give the council jurisdiction to construct a district sewer a petition signed by a majority of the property holders residing in the district petitioning therefore, is a necessary prerequisite to vest jur-

isdiction, and without which, the council had no authority to construct, and that all of their subsequent acts were void.

In support of their position counsel for defendants in error contend that the only grant of power authorizing the city council to construct a district sewer is contained in section three (3) in the clause: "The council shall cause sewers to be constructed in each district whenever a majority of the property  holders, residents  therein, shall petition therefor;" and that when construed with section six (6) which provides: "Whenever the mayor and councilmen shall deem such district sewers necessary as provided for in section three (3) of this act they may proceed with such work." leaves the construction of a district sewer discretionary with the council, even though a petition has been filed as provided for in said section.  With this construction, we can not agree.

In the assumption that section three (3) contains the only grant of power authorizing the construction of district sewers counsel for defendants in error, in order to harmonize section six (6) contend for a construction of the statute which would vest in the city council the arbitrary power of refusing to construct a district sewer even where a majority of the resident property holders of a district had petitioned therefor.  We do not believe that the legislature intended to so minimize the power of petition.  What valid reason could exist for authorizing the council to refuse the construction of such a meritorious  public  improvement when requested by a majority of the resident property holders of a district, at their own expense, and with no expense to the city, except when the city is the owner of a lot within the

district? On the other hand, we believe that when the legislature said: "The council shall cause sewers to be constructed in each sewer district whenever a majority of the property holders, residents therein, shall petition therefor" it vested in a majority of the resident property holders of each sewer district a mandatory power to compel by petition the city council to construct. Standing alone, section three (3) would make a petition by a majority of the resident property holders a necessary prerequisite to vest jurisdiction; but it is an elementary rule of construction that an entire act and all its parts must be taken together, and that construction adopted which gives effect to every clause and every part of the statute.

Section one (1) of the act contains an express grant of power to the mayor and councilmen to cause a general sewer system to be established, which shall be composed of three classes of sewers, to-wit: Public, district and private; and section two provides that public sewers shall be established along the principal courses of drainage at such points, to such extent, of such dimensions, and under such regulations as may be provided by ordinance.

Section three (3) provides that district sewers shall be established within the limits of the districts to be prescribed by ordinances, and shall connect with public sewers or other district sewers or with the natural course of drainage as each case may be * * * and more than one district sewer may be laid in a sewer district if deemed necessary by the council for sanitary or other purposes." And under section six (6), when ever the mayor and city council shall deem

such district sewers necessary as provided for in section three (3) they may proceed with such work." What sewers are provided for in section three (3) which the mayor and councilmen may construct under section six (6) "Whenever they deem necessary:" The language of section three (3) answers: "District sewers established within the limits of the district prescribed by ordinance connected with public sewers or other district sewers or with the natural course of drainage as each case may be, or additional sewers laid in a sewer district when deemed necessary by the council for sanitary or other purposes." The exception to the exercise of the discretionary power of the council conveyed in section one (1) and six (6) of the act is found in section three (3) in the clause: "The council shall cause sewers to be constructed in each sewer district whenever a majority of the property holders, residents therein, shall petition therefor," making it mandatory upon the council to construct a district sewer upon the filing of a requisite petition.

The numerous cases cited by counsel only determine that under statutes requiring the filing of a petition or providing an opportunity for protest by the property holders that those matters are jurisdictional propositions of law too well recognized to necessitate the citation of authorities in their support, but no authority is cited construing a statute similar to ours.

In the case of *Ogden City v. Armstrong,* 168 U. S. 224, on appeal from the supreme court from the Territory of Utah to the supreme court of the United States, an action brought to enjoin the city and its officers from levying as-

sessments upon real estate for the purpose of paving a portion of one of the streets of the city, the supreme court held that the council never acquired jurisdiction to levy the assessments, under an act providing for notice of the proposed improvement to be published for twenty (20) days in a newspaper of general circulation, and "if at or before the time so fixed written objections to such improvements signed by the owners of one-half of the front feet abutting upon that portion of the street, avenue or alley to be so improved be not filed with the recorder, the council shall be deemed to have acquired jurisdiction to order the making of such improvements."

The finding of fact disclosed that such a protest had been filed, and that the city council had decided that it was not signed by half of the property owners, and the court found that:

"No jurisdiction vested in the city council to make the assessment or to levy a tax for such improvement until and unless, the assent of the requisite proportion of the owners of the property to be affected had been obtained, and that the action of the city council in finding the fact of such assent was not conclusive as against those who duly protested. The fact of consent by the requisite number in this case to be manifested by failure to object is jurisdictional and in the nature of a condition precedent to the exercise of the power.

"Where the power to pave or improve depends upon the assent or petition of a given number or proportion of the proprietors to be affected this fact is jurisdictional, and the finding of the city authorites or council that the requisite number had assented or petitioned is not, in the absence of legislative provision to that effect conclusive. The want of such assent makes the whole proceedings void."

The court cites in support Dillon on Municipal Corporations, vol. 2, sec. 800, (4th. Ed.), and numerous authorities therein collated.

In *Zeigler v. Hopkins,* 117 U. S. 683, an appeal from the supreme court of the state of Colorado, the statute authorized the opening of a street, the cost and expenses of which were to be assessed on certain lots in proportion to the benefits accuring therefrom and provided, that when a majority in frontage of the owners of said lots should petition certain officials for the opening, those officials should organize into a board and proceed to open it and apportion the cost in the manner pointed out by the statute.

The finding of fact revealed that the petition regular in form for the opening of the street was presented to the mayor of the city, but was not in fact subscribed by the owners of a majority in frontage of the land declared to be benefitted, and the court said:

"All we are now called on to decide is, whether the presentation to the mayor of a petition signed by the owners of less than a majority in frontage of the property to be assessed as they were named in the last preceding annual assessment roll was sufficient to authorize the levy of the tax for which the lots in controversy were sold, and we have no hesitation in saying it was not."

In *Keese v. City of Denver,* 10 Colo. 112, 15 Pac. 825, plaintiffs brought their action to restrain the sale of real estate for the purpose of collecting an assessment placed thereon to pay for the construction of a sewer constructed under the direction of the city council of the city of Denver. The Colorado statute provided:

"The city council shall cause sewers to be constructed in any district whenever a majority of the property holders resident therein shall petition therefor, or whenever the board of health recommend the same as necessary for sanitary reasons, and said recommendation is approved by the city council."

The above section does not appear to have been modified by any other sections of the act relating to sewers, and the court necessarily held that in order to give the city council jurisdiction to construct a sewer a petition by a majority of the property holders, or a recommendation by the board of health were essential requisites to jurisdiction.

The provision in regard to the recommendation of the board of health is analogous to the clause in section six (6) of our statute providing that "Whenever the mayor and councilmen shall deem such district sewers necessary as provided for in section three (3) they may proceed with such work."

In the opinion, the court said:

"The evidence clearly shows that a majority of the property holders resident in said district did not petition for the construction of said sewer. To authorize the city council to act there must be a petition of the property holders or a recommendation of the board of health, and it appears that the action of the council was not based upon the recommendation of the board of health or had in pursuance thereof."

It will be observed that the above authorities only go to the proposition that under a statute requiring a petition it is an essential prerequisite to the exercise of jurisdiction that the requisite petition be filed. An examination will dis-

close the citation of no authority construing a statute similar to ours.   In fact, an extended research fails to disclose the existence of a statute wherein the sanitary conditions of a city are regulated by the petition of a majority of the resident property holders of the several districts into which it may be divided; and it certainly was not the intention of our legislature to vest the exercise of such an important and necessary power solely and alone in a majority, and, thereby, charge no individual directly with the responsibility of the exercise of the most important function essential to the growth and development of a city.   Taking the entire act under which the sewer was constructed and construing it as a harmonious whole, giving force and effect to all of its provisions, and keeping in view the generally recognized power of a city to provide for the regulation of its sanitary conditions, we are of the opinion that the city council was authorized to proceed with the construction of the sewer whenever in its judgment it was necessary, without the filing of a petition.

The second objection raised goes to the constitutionality of the act, that is, that the statute under which the tax was levied does not provide for any notice to owners of the property so taxed, or give them an opportunity to be heard; and that no sufficient notice was in fact given.   When the legislature delegated the power to the mayor and councilmen of municipal corporations in this territory, having a *bona fide* population of not less than one thousand (1,000) persons, to establish a general sewer system, that delegation of power carried with it all the incidental powers necessary to carry its object into effect within the law.   Of what utility

would such a grant of power be if unaccompanied with sufficient power to carry it into effect?

Under our system the power of taxation is vested exclusively in the legislative branch of the government but it is a power that may be delegated by the legislature to municipal corporatins which are mere instrumentalities of the state for the better administration of public affairs. When such a corporation is created it becomes vested with the power of taxation to sustain itself with all necessary public improvements, unless the exercise of that power be expressly prohibited. That the mayor and council of the city of Perry was authorized to establish and construct a necessary sewer system for the city, in the absence of prohibitive statutes, should not be questioned. The power to establish and construct a sewer system carried with it the power to create indebtedness and taxation for its payment.

In the case of *Gilmore v. Henlig*, 33 Kans. 156, 5 Pac. 781; cited with approval by counsel, it was held:

"Under a statute authorizing the city to provide for the construction of sewers and drains and to tax the cost thereof upon the adjacent property owners but did not require any notice should be given to the property owners, that a failure to provide for notice did not invalidate the statute."

The provisions of the statute in regard to the levying of the tax were as follows:

"The cost and expense of constructing the same shall be assessed against the lots or pieces of ground contained in the district in which the same is situated and the cost of same shall be levied and collected as one tax in addition to other taxes and assessments and shall be certified by the

city clerk to the county clerk to be placed on the tax roll for collection subject to the same penalties and collected in like manner as though taxed as provided by law."

In passing upon the validity of this statute, the court said:

"The statutes alone can not usually furnish a sufficient notice to property owners with regard to special taxes levied upon their property; for special taxes are levied at very irregular periods of time, for various purposes, and in various modes: Hence, it is generally necessary to give to property owners some specific notice with regard to special taxes. It is not necessary, however in any case that the notice should be personally served upon the property owner, or that the proceeding should be a judicial proceeding; but any notice that will enable the property owner to procure a hearing before some officer, board or tribunal, and to contest the validity and fairness of the taxes assessed against him, before the same shall become a fixed and established charge upon his property, will be sufficient. Nor is it necessary, in any case, that the notice should be given before the taxes are levied. All that is necessary is that the notice shall be given before the tax shall have become such a fixed and permanent charge that the property owner can have an adequate remedy to contest their validity or fairness. In support of the foregoing propositions we would cite the following authorities: *Cleveland v. Tripp*, 13 R. I. 50; *Allen v. Charlestown*, 111 Mass. 123; *City of St. Louis v. Oeters*, 36 Mo. 456; *In re DePayster*. 80 N. Y. 565; *Dunning v. Twp. Drain Co.*, 44 Mich. 518, 7 N. W. Rep. 239; *Davidson v. New Orleans*, 96 U. S. 97; *McMillen v. Anderson*, 95 U. S. 37; *Finnell v. Kates*, 19 Ohio St., 405; *McMicken v. City of Cincinnati*, 4 Ohio St. 395; *Nicholas v. Bridgeport*, 33 Conn. 190.

What notice did the city of Perry give to the property holders of sewer district number one (1) in this case?

First: It published ordinance number four hundred forty-two (442) creating sewer district number one (1) in the city of Perry, and providing for the construction of a sewer therein, section one (1) of which, provides: That a sewer district to be known as sewer district number one (1) of the city of Perry is deemed necessary for sanitary purposes, and is hereby created, said district to be composed of the following blocks (describing them); section two (2) that a lateral sewer is hereby ordered constructed in said district stating its intersecting and connecting points and describing its extension; section three (3) instructing the city engineer to prepare his profile maps, specifications and estimated costs, and present them at the next meeting of the city council; section four (4) that when such sections, profiles and specifications shall be filed with the city clerk and approved by the mayor and council, the city clerk shall advertise for sealed bids for the construction of such lateral sewer according to such specifications, which advertisement shall be published for ten days in the official paper of the city, and state that sections, profiles and specifications are on file in the office of the city clerk, and giving the date when such bids will be opened by the mayor and council for the purpose of entering into a contract for the construction of said sewer:

Second: The publication for a period of ten consecutive days in a daily or weekly newspaper of general circulation in the city of Perry of its notice for bids for the cost of the construction of said sewer which notice reads as follows:

"Notice is hereby given that according to resolution adopted by the mayor and city council sealed bids will be received for the construction of a lateral sewer in district number one of Perry, Oklahoma Territory, according to the plans and specifications now on file in the office of the city clerk, all bids to be received and filed with the city clerk not later, than October 30, 1903, and to conform with the instructions to the bidders now on file in said office.

"F. E. BUSH,<br>"City Clerk.

"First publication, October 15, 1903."

Third: By publication for four consecutive weeks in a daily and weekly newspaper of general circulation published in the city of Perry of ordinance number four hundred fifty-seven (457) levying and assessing a special tax upon certain lots (describing them) in the city of Perry for the building and construction of a lateral sewer in district number one (1).

Thus we see that the property owners of sewer district number one (1) in the city of Perry were notified:

First: By the publication of the ordinance creating the district, stating that it was deemed necessary for sanitary purposes and that a sewer would be constructed therein according to certain regulations set out in the ordinance:

Second: By the publication for ten consecutive days in a newspaper of general circulation in the city of Perry of the notice for bids for the construction of the sewer:

Third: The publication for (4) consecutive weeks of the ordinance levying and assessing the tax.

Sufficient notice was therefore given to the defendants

in error in this case, who were all residents of the city of Perry, affording them opportunity to protect their rights be- fore the tax levied became a fixed charge or lien against their property.

At this juncture it is contended that the above notice afforded the owners of property no opportunity to appear and be heard in the matter of fixing the *amount* of their individual assessments. This was not necessary.

Section 7 of the act provides:

"As soon as any district sewer shall have been completed the city engineer or other officer having charge of the work shall compute the whole cost thereof which shall also include all other expense incurred by the city in addition to the contract price of the work, and shall apportion the same against all the lots or pieces of ground in such district exclusive of improvements in proportion to the area of the whole district exclusive of the public highways, and such officer shall report the same to the commissioner and councilmen and the mayor and councilmen shall thereupon levy and assess a special tax by ordinance against each lot or piece of ground within the district."

Of what avail would such an opportunity be where the legislature has already fixed a mode of assessment which adjust itself automatically and where after the cost of construction has been ascertained, the amount of the individual assessment is determined not by a discretionary power but by a mathematical calculation? In what way could a hearing affect the amount of the assessment when the legislature has said that the whole cost shall be apportioned against the lots in said district exclusive of improvements in proportion to the area? There is no violation of property or of benefits,

no exercise of discretionary power, no equalizing board, or board of appraisers, or commissioners, nothing but a mathematical calculation.

The numerous cases cited by counsel are based upon statutes providing for the appraising of benefits by a board of appraisers, clothed with discretionary power; with the exercise of a jurisdiction to determine the amount of each individual assessment, and, consequently, are not applicable to the case at bar where the cost of construction having been once determined the legislature has fixed the amount of each individual assessment and there is no discretionary power to be exercised at the time the assessments are made. That the legislature is vested with such power is no longer an open question in this country.

In the case of *French v. Barber Asphalt Paving Company,* 181 U. S. 324, Mr. Justice Shiras, in an exhaustive consideration of the authorties upon this question said:

"The conclusions reached by this court in many cases cited and summarized are thus stated by two writers (Cooley and Dillon), whose views this court adopts.

"The major part of a local work is sometimes collected by general taxes while a smaller portion is levied upon the estates specially benefited. The major part is sometimes assessed on estates, benefited, while the general public is taxed a smaller portion in consideration of the smaller participation in the benefits. The whole cost in other cases is levied on lands in the immediate vicinity of the work. In a constitutional point of view, either of these methods is admissible, and one may sometimes be just, and another at other times. In other cases it may be deemed reasonable to make the whole cost a general charge, and levy no special as-

sessment whatever. The question is legislative, and, like all legislative questions, may be decided erroneously; but it is reasonable to expect that, with such latitude of choice, the tax will be more just and equal than it would be were the legislature required to levy it by one inflexible and arbitrary rule.

"The courts are very generally agreed that the authority to require the property specially benefited, to bear the expense of local improvements is a branch of the taxing power, or included within it—whether the expense of making such improvements shall be paid out of the general treasury, or be assessed upon the abutting or other property specially benefited or alone upon the abutters according to frontage or according to the area of their lots, is according to the present weight of authority, considered to be a question of legislative expediency."

In *Mattingly v. District of Columbia,* 97 U. S. 687, there was called in question the validity of the act of congress of June 19, 1878, 20 Stat. 166 C. 309, entitled: "An act to provide for the Revision of Correction of Assessments for Special Improvements in the District of Columbia, and for other Purposes," and it was said by the court:

"It may be that a burden laid upon the property of the complainants is onerous. Special assessments for special road or street improvements very often are oppressive but that the legislative power may authorize them, and may direct them to be made in proportion to the frontage, area or market value of the adjoining property, at its discretion, is, under the decisions, no longer an open question." 14 Wallace 676; *Shoemaker v. United States,* 147 U. S. 282.

In the case of *Parsons v. District of Columbia,* 170 U. S. 45, it was held after the extensive review of the au-

thorities that the enactment by congress that assessments levied for laying water mains in the District of Columbia should be at the rate of $1.25 per lineal foot front against all lots or lands abutting on the street, road, or alley, in which a water main shall be laid, was constitutional, and was conclusive alike of the necessity of the work and of its benefits as against abutting property. *Willard v. Presbury,* 14 Wall. 676; *Davidson v. New Orleans,* 96 U. S. 97; *Mobile Co. v. Kimball,* 102 U. S. 691; *Hagar v. Reclamation Dist.* 111 U. S. 701; Second Beach Pub. Corp. paragraph 1175, and authorities therein cited.

In *Gillette v. City of Denver,* 21 Fed. 822, the court evidently had under consideration a statute whose provisions were very similar to those in the case at bar. The learned Justice Brewer, in commenting upon the notice afforded by that statute, said:

"Now in this case, the tax is levied by the area; no question of value, no matter of judgment—a mere mathematical calculation; and of what earthly profit could it be to a taxpayer to have notice of that calculation? He can make it himself. He can not correct by testimony the judgment of anybody; it is as exact and settled as anything can be. In the proceedings to assess this tax and to do the work, there are three steps: First, there is the making of the contract for the building of the sewer: Second, there is the building of the sewer, and performing of the work; and third, the mere mathematical calculation, * * * the apportionment of the cost. As to the latter, no notice can be required, because notice would be of no avail; as to the first, the statute provides that the city council may not act except upon a petition of a majority of the property holders, or a recommendation of the board of health (under our statute

upon the recommendation of the city council), it acts only by ordinance; the contract can be let only on advertisement. Every citizen is bound to take notice of the ordinances of the city; so that anterior to the making of the contract he has all the notice which can be required; and the statute also provides, in reference to the doing of the work, that while the work is proceeding, on the complaint of any citizen or tax payer that any public work is being done contrary to contract, or the work or material used is imperfect or different from what was stipulated to be furnished or done, the council shall examine into the complaint, may appoint three commissioners, etc.; so that in reference to the making of the contract, the performing of the contract, there is provision for notice and as to the mere apportionment of the taxes, it is one of those things as to which in the nature of things no notice can be required, because no notice would be of value. So that, within the definitions laid down in these cases in the supreme court of the United States, it seems to me that it must be held that there was no violation in that statute of that provision of the federal constitution forbidding the taking of property 'without due process of law.' "

Our statute, with but slight modifications, not affecting the questions under consideration, was taken from the state of Missouri, and has been upheld by the supreme court of that state in the well considered case of *Heman v. Allen*, 156 Mo. 534, 57 S. W. 559; and in view of the fact that all the objections to the constitutionality of this act, raised in this case, were urged and passed upon in that case, and which case was afterwards affirmed on appeal to the supreme court of the United States, reported as the case of *Schmate v. Heman*, 181 U. S. 402, will be conclusive of the questions now under consideration in the case at bar. In that case it was contended by the defendants that section twenty-two (22) of

article six (6) of the city charter which provides, among other things, that as soon as a district sewer is fully completed the board of public improvements shall cause to be computed the whole cost thereof, and shall assess it as a special tax against all the lots of ground in the district respectively, without regard to improvements, and in the proportion as their respective areas bear to the area of the whole district, exclusive of the public highway was violative of section one (1) of the fourteenth amendment of the federal constitution which provides: "Nor shall any state deprive any person of life, liberty or property without due process of law;" and also of the constitution of the state, in that by their terms a betterment tax is assessed against the property of defendants, without regard to the question of corresponding benefits, and without notice of hearing, and opportunity to contest the existence of benefits to their property, or fairness of their apportionment between the several owners of the property as assessed.

In the determination of the questions raised the court entered into an extensive review of the authorities of that state citing *Lockwood v. City of St. Louis,* 24 Mo. 20, wherein it was said:

"These special assessments are found in the English law, and they prevail, it is believed in most, if not all, of our American states; and their validity, when assessed as in this instance, can not be questioned under our constitution. Their intrinsic justice strikes everyone. If an improvement is to be made, the benefit of which is local, it is but just that the property benefited should bear the burden. While the few ought not to be taxed for the benefit of the whole, the whole ought not to be taxed for the benefit of the few.

"The power to levy assessments for local improvements belongs to the legislature, which is the taxing power, but which may be delegated by that branch of the government to municipal corporations, which may, in their discretion, impose the whole or any part of the cost of such improvement, against adjoining property: Provided, always, that the assessments for benefits be not in substantial excess of the benefit received." *Garrett v. City of St. Louis*, 25 Mo. 505; *City of St. Joseph v. Farrell*, 106 Mo. 477, 17 S. W. 497.

In the case of *Rutherford v. Hamilton*, 97 Mo. 543, 11 S. W. 249, suit was brought upon a special tax bill issued by the city engineer of the city of St. Joseph, in payment for a lateral sewer constructed for the purpose of the drainage of adjacent property of which the defendant was a part owner. The defense interposed was, that the act under which the sewer was constructed was unconstitutional "because the cost of the sewer was apportioned by the city engineer against the property fronting on the improvement in proportion to the frontage of each lot, without considering the amount of actual benefits conferred by the sewer on each lot owner;" and it was held that the constitutionality of such an act was no longer an open question in that state, and that such an assessment was conclusive on the property owner as to the amount of benefit which the property derived from the improvement. 100 Conn. 300; 13 S. W. 683; 123 Mo. 546; 27 S. W. 471.

In *Heman v. Allen, supra*, the court in its opinion says:

"In the absence of any more specific constitutional restriction than the general prohibition against taking property without due process of law, the legislature of the state, having the power to fix the sum necessary to be levied for

the expense of the public improvement, and to order it to be assessed, either like other taxes, upon property generally, or only upon the lands benefited by the improvement, is authorized to determine both the amount of the whole tax and the class of lands which will receive the benefit, and should, therefore, bear the burden, although it may, if it sees fit, commit the ascertainment of either or both of these facts to the judgment of commissioners.

"When the determination of the lands to be benefited is entrusted to commissioners, the owners may be entitled to notice and hearing upon the question whether their lands are benefited, and how much. But the legislature has the power to determine, by the statute imposing the tax, what lands which might be benefited by the impovements are in fact benefited; and, if it does so, its determination is conclusive upon the owners and courts, and the owners have no right to be heard upon the question of whether their lands are benefited or not, but only upon the validity of the assessment and its apportionment among the different parcels of the class which the legislature has conclusively determined to be benefited. No notice was required .to be given to defendant of the passage of the ordinance .or the assessment before the issuing of the tax bill, and none was necessary."

In the opinion of the supreme court of the United States affirming the above case and cited above, the court said:

"The only questions which are open to our consideration upon this record is the contention of the plaintiff in error, that the provisions of the charter of the city of St. Louis, the ordinance of municipal assembly, the contract which the defendant in error made thereunder, and the assessments against the property of the plaintiff in error, for the cost of the construction of said sewer, were null, and void and of no effect, for the reason that they were repugnant to the

14th amendment to the constitution of the United States. This contention has been determined under a similar state of facts by this court in the recent case of *French v. Barber Asphalt Company*, 181 U. S. 324, in error to the supreme court of the state of Missouri; and upon the authority of that case, the judgment of the supreme court is affirmed."

The citation of the above authorities, in our judgment, is a sufficient disposition of the important questions necessary to a determination of this controversy, and which were relied upon by the defendants in error to secure an affirmance of the action of the court below.

The insufficiency of the estimate of the cost of construction, and that the contract for the construction was let for a greater sum than the estimated costs, are questions raised by the fourth and fifth paragraphs of plaintiffs' petition in the court below, but which have not been presented in the brief of counsel in the presentation of this case on appeal, and which we, therefore, conclude have been abandoned.

The evidence discloses that the defendants in error stood by without objection or protest when the construction of the sewer adjacent to their property was in progress. Equity does not look with favor upon their silent and approving acquiescence of the performance of labor and expenditure of money enhancing the value of their properties when contrasted with their belligerent and war-like attitude exhibited for the first time after the full completion of the work. It was the plain duty of the defendants in error upon the publication of the ordinance creating the sewer district, or when they discovered that labor and money was being expended in

the actual construction of the sewer, to vigorously object and protest against it; then was an opportune time to test by injunction or other proceedings the legality of the various steps being taken; but no objection was made, no protest was filed, and not a single murmur was heard in the sewer district from that November morning when Contractor Plummer and his workmen with their picks and shovels and spades went out to improve the sanitary conditions of the district in which all the defendants in error were resident property holders to the evening when the entire work was completed according to contract, approved by the city engineer and accepted by the city.   It was not until after the completion of the work and when these defendants were called upon to pay their respective assessments for benefits received that it occurred to them that an injunction proceeding was a necessary and proper remedy to invoke.   Under such circumstances both the law and equity look with approval upon the payment of such assessments, especially when made for a public work of this character.

It is insisted, however, that this case must be affirmed in any event, as the mayor and councilmen of the city of Perry failed to levy the tax as required by law.   Section eight (8), chapter (6) of the act provides:

"The mayor and councilmen shall each year levy on each lot or piece of ground, a sufficient sum in addition to other taxes, to discharge the maturing installment on each particular tract, with interest on the unpaid installment for such year, certify the same to the county clerk to be collected as other taxes, and which money, when collected by the county treasurer, shall be paid to the holder of such certificate and endorsed thereon upon presentation of the certificate."

It is conceded that the levy was not made as required by section eight (8), and that the tax complained of could not become a lien until a levy was properly made. This, however, did not warrant the granting of the injunction in the court below, which not only restrained the county treasurer from collecting the tax, but perpetually enjoined the mayor and councilmen from making any assessment or levy of taxes against the property of defendants below, for the payment of the sewer tax warrants.

Section nine (9) of the act provides:

"That in the event any special assessment shall be set aside or be invalid in whole or in part, the city council may, at any time, in the manner herein provided for an original assessment, proceed to cause a new assessment to be made, which shall have the like force and effect as the original assessment."

From the above section it will appear that the failure of the mayor and city council to make the levy as provided by law would not invalidate the proceedings, and they should not be restrained from doing that which the law required them to do.

The judgment of the district court of Noble county is reversed and the injunction, heretofore granted herein, will, therefore, be set aside, and the mayor and council authorized to proceed in the levying and assessment of the taxes for the construction of the sewer in district number one (1) in the city of Perry as provided by law.

Hainer, J., who presided in the court below, not sitting; Burford, C. J., and Pancoast, J., dissenting; all the other justices concurring.