## CITY OF COALGATE *et al.* v. GENTILINI.

No. 5333.    Opinion Filed October 5, 1915.

(152 Pac. 95.)

1.    **MUNICIPAL CORPORATIONS — Ordinances —Effect— Time.** Section 3390, Rev. Laws 1910, provides that a city ordinance does not become operative until 30 days after its passage and approval. **Held,** that this does not render the ordinance void; and it cannot be treated as not in existence during that time, but. while it is inoperative, yet the effect and purpose of the ordinance is, from and after the date of its passage and approval, to take control of the subject of the ordinance.

2.    **MUNICIPAL CORPORATIONS—Public Improvements—Rights of Property Owners—Laches.** When money has been expended by a city for public improvements, and a property owner of the city sits silently by and allows the expenditures and improvements to be made. with full opportunity to prevent its accomplishment, yet without taking legal steps to prevent the same, after the money has been expended, the improvements made, and the relations of property and parties have been changed, it is then too late for him to ask a court of equity to relieve against that which his own laches has permitted to be done.

(Syllabus by Brett, C.)

*Error from District Court, Coal County;*
*Tom D. McKeown, Assigned Judge.*

Action by John Gentilini against the City of Coalgate and others.    Judgment for plaintiff, and defendants bring error.    Reversed and remanded, with directions.

*George Trice,* for plaintiffs in error.

*Fooshee & Brunson,* for defendant in error.

Opinion by BRETT, C.   This action was commenced in the district court of Coal county by John Gentilini, defendant in error, as plaintiff, against the plaintiffs in error, as defendants, to enjoin the levy and collection of certain special tax against certain real estate owned by

Gentilini in the city of Coalgate. A trial was had in the district court which resulted in judgment in favor of the plaintiff in that court, John Gentilini, and enjoined the defendants from levying and collecting this special tax.

The material facts in the case briefly stated are as follows: A number of resident·property holders in the city of Coalgate petitioned the mayor and council to establish a district sewer embracing certain territory described therein. It does not appear that this petition was signed by a majority of the resident property holders of the proposed district. But on May 29, 1912, the mayor and council passed an ordinance creating and establishing the sewer districts, which was approved by the mayor May 30, 1912; and on June 6th this ordinance was published in the Record-Register, a weekly newspaper published in the city of Coalgate; and in the same issue of this newspaper the mayor published notice that bids would be received on June 12th for the construction of this sewer system, and on that date awarded the contract for the construction of the system for a sum less than the estimated cost of the system. The evidence shows that prior to the passage of the ordinance the defendant in error (plaintiff below), John Gentilini, had from time to time met with the council and vigorously protested against the construction of the system. But when the ordinance was passed, and the contract let, he took no further steps until the system had been completed, and then sued out this action to enjoin the levy and collection of taxes against his property to pay for the system, which had been completed.

The plaintiffs in error contend that, inasmuch as the defendant in error sat silently by, after the passage of this ordinance, and allowed these expenditures and public

improvements to be made which would tend to benefit his property without objecting, he should not now be aided by a court of equity to escape the duty of paying for the benefits which he has tacitly accepted. But the defendant in error insists that at the time this contract was let, the council was without authority to act; that the ordinance creating the district had not become operative; that under section 3390, Rev. Laws 1910, in the absence of an emergency clause, the ordinance did not become operative until 30 days after its passage and approval, and that the contract was let on the thirteenth day after its approval; that the notice for bids was published only one week, instead of two consecutive weeks, as provided by law; that the petition was not signed by a majority of the resident property owners within the proposed district, and for these reasons the council had no authority or jurisdiction to act in the premises.

There seems to be no doubt that under section 989, Comp. Laws 1909, the mayor and council had authority without a petition to establish a sewer district. *City of Perry v. Davis et al.*, 18 Okla. 427, 90 Pac. 865; *City of Muskogee et al. v. Rambo et al.*, 40 Okla. 672, 138 Pac. 567. And did the fact that they acted before the ordinance creating and defining the boundaries of this district became operative, deprive them of jurisdiction, and place them in the attitude of mere trespassers in having this work performed? In other words, was the ordinance void simply because it had not yet become operative? We think not. In *Nor. Pac. Ry. v. Washington*, 222 U. S. 370, 32 Sup. Ct. 160, 56 L. Ed. 237, the court was considering an act of Congress which did not go into effect until one year after its passage, and it was urged there, as in the case at bar, that as a result of that fact, the act should

be treated as not existing, until the expiration of a year from its passage. But Mr. Chief Justice White, in delivering the opinion, says, "We are of the opinion that this view is not compatible with the paramount authority of Congress," and holds that the effect and purpose of this act was to take control of the subject of the act from the date of its passage, and that no such purpose could be manifested by a void statute, since a void statute is not effective for any purpose. See, also, *Title, etc., Co. v. Harland & Hollingworth,* 228 U. S. 567, 33 Sup. Ct. 614, 57 L. Ed. 969. And we think the same reasoning applies in the case at bar, and that the effect and purpose of this ordinance from the date of the passage and approval were to take control of the subject of the ordinance.

The ordinance could have been challenged by a referendum vote. But this was not done. The legality of the proceedings under the ordinance could have been challenged in a court of competent jurisdiction before any outlay was made, and before there was any change in the conditions or relations of the property or the parties. But this was not done. And since the defendant in error took advantage of none of the means at his hand to prevent this outlay of money for public improvements tending to benefit his property, can he now in a court of equity be heard to say that, since he has the improvements, he will not pay the price? We think not. Equity aids only the diligent; and in *Speidel v. Henrici,* 120 U. S. 377, 387, 7 Sup. Ct. 610, 612 (30 L. Ed. 718), Mr. Justice Gray, in speaking of the functions of a court of equity, says:

"Nothing can call forth this court into activity but conscience, good faith and reasonable diligence. Where these are wanting, the court is passive, and does nothing. Laches and neglect are always discountenanced."

*Penn Mutual Life Insurance Co. v. Austin,* 168 U. S. 685, 18 Sup. Ct. 223, 42 L. Ed. 626, is a case in which the city of Austin, Tex., had in 1882 entered into a contract with the City Water Company to supply water and light for the city. The contract, with certain options, was to run for 20 years. In 1890 the city passed an ordinance calling an election to vote bonds in the sum of $1,400,-000 to construct its own water and light system. The bonds were voted, and the City Water Company sat by until the city had expended about $1,000,000 of this amount in the construction of its water system. The company then came into court, and sought to enjoin the city, alleging, among other things, that the ordinance and the legislative act under which it was passed were in violation of constitutional rights guaranteed to the company by the Constitution of the United States. A demurrer to the petition was sustained in the lower court, and an appeal was perfected to the Supreme Court of the United States. And Mr. Justice White, in delivering the opinion of the court, holds squarely that, even conceding all that the company had pleaded to be true, and that both the legislative act and the ordinance were unconstitutional, the company, after sitting silently by and seeing $1,000,000 of public money expended, and the conditions and relations of property and parties changed, with full opportunity to prevent its accomplishment, yet without taking legal steps to prevent the consummation of the wrong, could not then ask a court of equity to relieve against that which its own laches had permitted to be done; and the action of the lower court in sustaining the demurrer was upheld.

Assuming, without deciding, in the case at bar, that the defendant in error might have prevented the outlay

of public money for the improvements complained of, and that there were gross irregularities in the proceedings of the council, yet, since he sat silently by, and allowed these expenditures and public improvements to be made, with full opportunity to prevent their accomplishment, but without taking legal steps to prevent the consummation of the alleged wrong, he cannot, after the relations of property and parties have been changed, ask a court of equity to relieve against that which his own laches has permitted to be done. This has been consistently held in every case of this character that this court has passed upon. In *City of Perry v. Davis et al.*, 18 Okla. 427, 90 Pac. 865, Mr. Justice Garber, speaking for the court upon this question, says:

"It was the plain duty of the defendants in error upon the publication of the ordinance creating the sewer district, or when they discovered that labor and money were being expended in the actual construction of the sewer, to vigorously object and protest against it. Then was an opportune time to test by injunction or other proceedings the legality of the various steps being taken."

And in *City of Muskogee et al. v. Rambo et al.*, 40 Okla. 672, 138 Pac. 567, Mr. Chief Justice Kane, speaking for the court, says:

"It was the duty of the property owners, upon the publication of the ordinance creating the sewer district, or upon discovering that labor and money were about to be expended in the actual construction of a public work which would tend to benefit their property, to promptly take action, by injunction or otherwise, against the proceedings providing for such improvements, if in their judgment they are irregular. Under the rule therein laid down, the property owners cannot stand by without objection or protest while the public work is in progress, and when the entire work is completed, and they are

called upon to pay their respective assessments for the benefits received, then invoke relief by injunction in a court of equity. Other cases to the same effect are *Lumber Co. v. Muskegon*, 152 Mich. 59, 115 N. W. 957; *Townsend v. Manistee*, 88 Mich.. 408, 50 N. W. 321; *Elkhart v. Wickwire*, 121 Ind. 331, 22 N. E. 342; *Collins v. Holyoke*, 146 Mass. 298, 15 N. E. 908; *Paulosn v. Portland*, 16 Or. 450, 19 Pac. 450, 1 L. R. A. 673; *Pittsburg, etc., R. Co. v. Fish*, 158 Ind. 525, 63 N. E. 454; *Spaulding v. Baxter*, 25 Ind. App. 485, 58 N. E. 551."

We think the judgment of the lower court was wrong, and should be reversed.

We therefore recommend that the judgment be reversed, and the cause remanded, with directions to the trial court to enter judgment for the defendants in that court.

By the Court: It is so ordered.