JOHNSON, et al, Respondents, v. CITY OF RAPID CITY, et al Appellants.

(231 N. W. 524.)

(File No. 7033.   Opinion filed June 27, 1930.)

*George Williams,* of Rapid City, for Appellants.

*Bangs & Rudesill,* of Rapid City, for Respondents.

BROWN, P. J. Defendants appeal from an order overruling a general demurrer to a complaint which alleges in substance that the governing body of Rapid City by resolution established a sewer district within the corporate limits of the city to be known as storm sewer district No. 6, and adopted and filed in the office of the city auditor a plan of such sewer district, and proposed to construct a trunk sewer therein and assess the entire costs thereof against the property within the district; that plaintiffs are owners of property within the district which will be subject to assessment, and that no petition has ever been presented to the governing body of the city for the construction of any such sewer district or any part thereof, but, on the contrary, a written protest and objection against the establishment and construction of said sewer, signed by approximately 50 per cent of the resident electors of the district, was filed in the office of the city auditor and called to the attention of the governing body prior to the adoption of the resolution; that the governing body has published notice calling for sealed bids for the construction of such storm sewer, and, unless restrained and enjoined, the governing body will let a contract for such construction at an expense of many thousands of dollars, which will become a lien on the property of the plaintiffs, and plaintiff asks for an injunction to restrain the defendants from letting any contract or proceeding for the construction of the proposed sewer.

Revised Code 1919, § 6169, enumerates in eighty-three separate paragraphs powers possessed by every municipal corporation. Among the powers enumerated are the following: Paragraph 14, to establish and construct, main, trunk, and service sewers, drains and all necessary manholes, required in connection therewith, and to acquire by purchase, condemnation, or otherwise any sewer, drain or system of sewerage and drainage already established and constructed by private individuals, associations, or corporations; paragraph 71, to regulate the construction, repair, and use of vaults, cisterns, areas, hydrants, pumps, sewers, and gutters; paragraph 76, to make assessments for local improvements on property adjoining or benefited thereby to collect the same in the manner provided by law. Sections 6368-6387 provide the method and procedure for the establishment and construction of sewers and sewer

districts, and section 6376 provides that, whenever a municipality shall have established a sewer district, and a majority of the resident electors residing in any district shall have petitioned the governing body for the construction of a main or trunk swer, or part of either, it shall, by a resolution, declare the necessity therefor, and shall cause plans and specifications to be filed in the office of the city engineer or town clerk, and give notice of the proposed passage of such resolution by publication once each week for two successive weeks in an official newspaper, stating the time and place when and where property owners in the district may make objections to the construction of the sewer or to the plans and specifications therefor, and, after such hearing, the governing body may, by resolution, adopt or reject such plans and specifications, or amend the same and adopt them as amended, and order the construction of the sewer in accordance therewith; and, from the time of the adoption of such resolution, the governing body shall have jurisdiction to make the improvement therein specified and to assess the cost thereof.

It is the contention of appellant that the provision of this section for a petition to the governing body by a majority of the resident electors in any sewer district has no application where the governing body itself desires, or is willing to construct, a sewer; that the petition is merely a club placed in the hands of the electors with which to coerce a recalcitrant or reluctant governing body to construct a sewer against the wishes of the members of the governing body; that where a petition signed by a majority of the resident electors is presented to the governing body, it must by resolution proceed to the establishment and construction of the sewer, but that it has power without any petition to construct a main or sewer whenever it so desires. We think this is a mistaken view of the meaning of the statute. The whole history of sewer legislation from territorial days down to the present time discloses a disposition on the part of the Legislature to limit the authority of the city councils in the matter of construction of sewer systems. In Compiled Laws 1887, § 1000, it is provided that no measure shall be taken for the establishment of such system except upon the affirmative vote of at least two-thirds of the members of the city council. Laws 1890, chapter 37, article 20, § 1, contained the same limitation. Laws

1893, chapter 150, § 1, had a similar proviso. Laws 1895, chapter 168, § 6, provided that, if the owners of real estate along the line of sewer, liable for more than one-half the assessment, should file written objection to construction of a proposed sewer, the city council should have no power to proceed any further in the matter.

· Laws 1899, chapter 128, again provided that no measure should be taken for the construction of a sewer system except upon the affirmative vote of at least two-thirds of all the aldermen elect. Revised Codes of 1903, § 1341 (Pol. Code), contained a similar proviso, as did Laws of 1903, chapter 213, § 1. Laws of 1909, chapter 110, was a general act for the establishment of sewer systems in cities, and section 7 of the act provided that, when a sewer district or districts had been established, "and a majority of the resident electors residing within said district shall have petitioned the city council * * * for the constructon of a main or trunk sewer * * * the city council * * * shall, by resolution, declare the necessity therefor," and shall cause plans and specifications to be prepared by the city engineer and filed in his office for the examination of all parties interested, and, after hearing upon notice by publication in the official newspaper stating the time and place when and where property owners may make objection to the construction of the sewer, the city council may by resolution adopt such plans and specifications, or amend them and adopt them as amended, and order the construction of the sewer accordingly, and from the time of the adoption of such resolution the city council shall have jurisdiction to make the improvement and assess the costs thereof.

■ ■ Appellant says: "Section 6376 was obviously enacted for no other purpose than to grant a mandatory power to the resident electors of a sewer district to compel, by petition, the governing body to construct a main or trunk sewer. Prior to its enactment as section 7, chapter 110, Session Laws 1909, the residents, electors or property owners in the sewer district were entirely without power to compel the construction of a sewer, whether main, trunk or service. This want of power still exists as to service sewers." We think it is quite obvious that section 6376 was not enacted for the purpose of giving the electors power to compel by petition the governing body to construct a main or trunk sewer. Appellant truly says that the electors are still without any such

power as to service sewers. The privilege of connecting service sewers with main or trunk sewers is under the absolute control of the governing body of the city. Code, § 6385. What good it would do the electors to give them power to compel the construction of a main or trunk sewer and withhold from them the power or privilege of connecting their service sewers with such main or trunk sewer, appellant does not try to state. We cannot suppose that the Legislature, intending to do resident electors of a sewer district a service, would enact a law giving them power to compel the construction of a main and trunk sewers, while withholding from them power to compel connection of their service sewers with the main or trunk sewers so constructed. Appellant argues that it is probable that Rev. Code 1919, § 6376, was adopted from the state of Oklahoma, and, if so, should receive the construction placed upon the Oklahoma statute by the Supreme Court of the state in Perry v. Davis, 18 Okl. 427, 90 P. 865, 868, but there is very little similarity between the Oklahoma statute and our statute on this subject. The Oklahoma statute provides that the council shall cause sewers to be constructed in each district whenever the majority of the property owners, residents therein, shall petition therefor. Our statute provides that, when a majority of the resident electors in an established sewer district shall have petitioned the governging body for the construction of a main or trunk sewer, the governing body shall take certain specified proceedings thereafter, and may adopt a resolution for the construction of the sewer, and from the time of the adoption of such resolution the governing body shall have jurisdiction to make the improvement. Our statute plainly leaves the question of whether or not a sewer shall be constructed to the ultimate decision of the governing body, and one of the primary jurisdictional steps required by the statute to be taken before the governing body can adopt a resolution for the construction of the sewer is that a majority of the resident electors residing in the sewer district shall have petitioned the governing body for the construction of the sewer.

The order appealed from is affirmed.

POLLEY, SHERWOOD, CAMPBELL, and BURCH, JJ., concur.