## NORRIS *et al.* v. CITY OF LAWTON *et al.*

No. 6579. Opinion Filed April 13, 1915.

(148 Pac. 123.)

1. **MUNICIPAL CORPORATIONS—Paving of Street—Right to Prescribe Condition.** The paving of the streets of a city is a work of a public character even when done by contract, and the city having control of its affairs as trustees for the public, may prescribe the terms and conditions upon which it will permit such work to be done on its behalf, when such terms and conditions do not violate any law or rule of public policy of the state.

2. **SAME—Paving Contract—Provision as to Wage Scale.** A provision in a contract between a city and a contractor requiring said contractor to pay unskilled labor at the rate of 25 cents per hour, where it appears from the evidence that this amount was the current rate of wages in said city at the time the contract was entered into, is not violative of any constitutional or statutory provision, or contrary to any rule of public policy of this state.

3. **SAME — Improvements — Assessment — Irregularity in Sale of Bonds—Effect.** The city of L. entered into a contract with S. to pave certain streets of said city and to take in payment therefor paving bonds of said city at par. After the execution of this contract, S. was unable to proceed with the work, and an arrangement was entered into whereby S. agreed to proceed with the work and accept the estimates of the city engineer at a discount of 10 per cent. from the face thereof, and the bonds were to be deposited in escrow and delivered to the purchaser in amounts not to exceed the amount of the various estimates as

the work progressed, and said purchaser was to pay upon delivery of said installments of bonds drafts of the city for an amount equal to the face of said bonds so delivered, less 10 per cent. and the proceeds of said draft were paid to the contractor, less 10 per cent., which was retained until the final completion of said work, and under this arrangement the work was completed, the entire issue of bonds delivered to the purchaser, and the contractor paid in full. **Held,** that the sale of the bonds was, at most, an irregularity which perhaps might have been enjoined, but did not defeat the jurisdiction of the city to make the improvements or render void the assessments levied to pay therefor.

4.    **SAME—Assessments—Injunction—Estoppel.** When a city acquires jurisdiction by preliminary proceedings to pave certain of its streets, a property owner who stands by and sees such improvements made with the knowledge that the city authorities intend to levy and collect a special tax against his property and that those who do such work cannot be compensated in any other way, and offers no objection thereto until complete performance of the work has been made, cannot thereafter maintain an action to enjoin the collection of assessments against his property on the ground of alleged irregularities in the proceedings subsequent to the time that jurisdiction to perform such work had attached.

5.    **INJUNCTION—Motion to Dissolve Temporary Injunction—Dismissal of Petition.** On a motion to dissolve a temporary injunction prior to the time the issues are made up, it is error to dismiss the petition, even though the temporary injunction should be dissolved.

(Syllabus by the Court.)

*Error from District Court, Comanche County;
J. T. Johnson, Judge.*

Action by J. L. Norris and others against the City of Lawton and others. Judgment for defendants dissolving a temporary injunction and dismissing case, and plaintiffs bring error. Affirmed and remanded, with directions.

*J. A. Diffendaffer, J. F. Thomas,* and *Burwell, Crockett & Johnson,* for plaintiffs in error.

*McElhoes, Ferris & Rinefort* and *Charles C. Black,* for defendants in error.

HARDY, J.    The plaintiffs in error assign as grounds for reversal five separate assignments of error, which present for our consideration two propositions, as follows: (1)

That the court erred in dissolving the temporary injunction theretofore issued in said case; and (2) the court erred in rendering final judgment and in dismissing the case.

Under the first proposition may be considered two separate reasons, which are urged for reversal of the order of the trial court in dissolving the temporary injunction, to-wit: (1) That the contract between the city and. the contractor under which the paving in question was done is void because it provided for not less than 25 cents an hour to be paid to common laborers on the work; and (2) because the bonds issued to pay for said work were sold at less than par. If these two objections, or either of them, are well taken and render the proceedings void so as to defeat the assessments levied by the city of Lawton, then the court committed error in dissolving the temporary injunction; if not, then no error was committed.

In order to determine whether the contract is void because of the provision therein requiring that common laborers be paid not less than 25 cents per hour, it is necessary to consider the legislation in this state upon this question. Section 3757, Rev. Laws 1910, commonly known as the "Eight Hour Law," provides that:

"Eight hours shall constitute a day's work for all laborers, workmen, mechanics, prison guards, janitors of public institutions or other persons now employed, or who may hereafter be employed by or on behalf of the state, or by or on behalf of any county, city, township or other municipality. * * * Provided, further, that not less than the current rate of per diem wages in the locality where the work is performed shall be paid to laborers, workmen, mechanics, prison guards, janitors in public institutions, or other persons so employed by or on behalf of the state, or any county, city, township or other municipality, and laborers, workmen, mechanics, or other persons employed by contractors or subcontractors in the execution of any contract or contracts with the state, or with

any county, city, township, or other municipality thereof, shall be deemed to be employed by or on behalf of the state, or of such county, city, township, or other municipality."

The constitutionality of this statute was sustained in the case of *Byars v. State*, 2 Okla. Cr. 481, 102 Pac. 804, Ann. Cas. 1912A, 765, in an opinion by Doyle, J. The court in this opinion says:

"The manifest purpose of this provision is to promote the industrial welfare of the people by fixing a high standard for employees on public work. The statute in question is clearly calculated to promote the purpose of public policy of the state as expressed in the Constitution, and does not restrict or interfere with the right or liberty of the employee and employer to contract, and can only be regarded as a direction by a principal to his agent, and therefore as a matter of consideration to the principal and agent only. Oklahoma as a sovereign state is no less free as a party to contract than any person in the state, and the lawmaking power has the right to provide that contracts made by the state or any agent of the state shall be executed in conformity with the requirements of the Constitution and the statute."

Similar legislation has been upheld in the following cases: *Holden v. Hardy*, 169 U. S. 366, 18 Sup. Ct. 383, 42 L. Ed. 780; *State v. Atkin*, 64 Kan. 174, 67 Pac. 519, 97 Am. St. Rep. 343; *Atkin v. Kansas*, 191 U. S. 207, 24 Sup. Ct. 124, 48 L. Ed. 148; *Ellis v. U. S.*, 206 U. S. 246, 27 Sup. Ct. 600, 51 L. Ed. 1047, 11 Ann. Cas. 589; *Short v. Min. Co.*, 20 Utah, 20, 57 Pac. 720, 45 L. R. A. 603; *People v. Warren*, 77 Hun. 120, 28 N. Y. Supp. 303.

In the case of *Byars v. State, supra*, it is further said in the opinion:

"The Constitution of Oklahoma expressly reserves to the state control over all public highways, including the roads, streets, and alleys of its municipalities. The opening, construction, and maintenance of public highways is purely a governmental function, whether done by the state

directly or by one of its municipalities, for which the state is primarily responsible, and it is immaterial whether such public work is paid for by the state, the county, the city, or by the benefited property owners. It is a work of a public, not private, character. The manner of payment does not change the character of work."

See, also, *Atkin v. Kansas, supra.*

There is no question presented in this case as to the right of an employer and an employee in private work to contract upon any terms they may see fit, but the question here presented is the right of the state to prescribe terms and conditions upon which public works performed by it or by contractors working under contract with the state or some municipal subdivision thereof may be done. The contention is made that this provision in the contract destroys the element of competition, and compels each and all of those bidding on the work to figure the wages of common laborers at not less than 25 cents per hour for eight hours a day, and that by reason thereof the contract is illegal and void. This by no means follows. The provision in the statute requiring that eight hours shall constitute a day's work may be said in a certain sense to have a tendency towards increasing the wages paid to laborers. As an illustration, if $2 be the current rate of wages for a day's work consisting of ten hours, it will readily be seen that 20 cents per hour would be the sum earned by the laborer; while if the day's work be limited to eight hours, and the current rate of wages be paid, as required by statute, the laborer would receive $2 for eight hours' work, or 25 cents per hour. The same objection could be urged to the statute as is urged to the contract in question. The right of the state to impose conditions upon which public work shall be done seems now to be well established, and it is seen that it makes no difference whether the work is performed by the state directly or through one of its agencies, or through the medium of a contractor. *Ellis v.*

U. S., 206 U. S. 246, 27 Sup. Ct. 600, 57 L. Ed. 1047. In the performance of work of this character, the state, when acting itself or through the medium of the city, is acting as a trustee for the public, and is discharging a duty owed by it to the public to maintain highways of the state and streets of the city located therein. No person has a vested right to work for the state or any of its municipalities upon public works; but this is rather a privilege granted by the state or municipality, and may be granted upon such terms and conditions as the state may see fit, not in conflict with the law. And this is true whether the work be done by the state or municipality directly, or be done through the medium of a contractor who holds a contract with the state. And the laborers of every grade upon the work so performed are in the employment of the state and within the terms of the statute.

In *Atkin v. Kansas, supra,* it is said:

"It cannot be deemed a part of the liberty of any contractor that he be allowed to do public work in any mode he may choose to adopt, without regard to the wishes of the state. On the contrary, it belongs to the state, as the guardian and trustee for its people, and having control of its affairs, to prescribe the conditions upon which it will permit public work to be done on its behalf, or on behalf of its municipalities. No court has authority to review its action in that respect. Regulations on this subject suggest only considerations of public policy. And with such considerations the courts have no concern."

As was said in *People v. Crane* (N. Y.), 108 N. E. 427, decided February 25, 1915:

"It is now perceived that all persons engaged on the public works, from the highest officers to the lowest laborers, through all the gradations of contractors and subcontractors, are, in a very vital sense, in the service of the state. The state has a legitimate concern in the selection of the men to be employed from one extreme of the official hierarchy to the other. Whether they are called officers or employees does not matter."

And as was said in *People v. Orange Co. Road Const. Co.*, 175 N. Y. 84, 67 N. E. 129, 65 L. R. A. 33:

"If the state itself prosecutes the work, it may dictate every detail of the services required in its performance; prescribe the wages of workmen, their hours of labor, and the particular individuals who may be employed. * * * The state in this respect stands the same as its citizens. Its rights are just as great as those of private citizens, and no greater."

The right of the Legislature to pass a general law regulating the compensation of laborers employed by the state or by officers under its authority, which disturbs no vested right or contract, is upheld in the case of *Clark v. State*, 142 N. Y. 101, 36 N. E. 817. In *Gies v. Broad*, 41 Wash. 448, 83 Pac. 1025, an ordinance of the city of Spokane requiring that in all work done by contract for the city in the improvement of its streets eight hours should constitute a day's work, and the rate of wages for laborers should not be less than $2.25 for a day's work, was sustained. In *Mallette v. City of Spokane*, 77 Wash. 205, 137 Pac. 496, 51 L. R. A. (N. S.) 686, the question was again considered, and the validity of an ordinance sustained, though it appeared that the rate of wages prescribed therein of $2.75 was higher than the ordinary rate of wages. This opinion seems to be a well considered opinion, and reviews the authorities upon this question. It thus appears that the authority of the state by statute, and of the city by ordinance, to prescribe the hours that constitute a day's work upon public works, and also the authority to prescribe the terms and conditions upon which said work may be performed, is established.

The authorities cited by plaintiffs in error in support of their proposition that the contract is void go to the effect of holding that statutes which create an unjust discrimination between union labor and common labor, or between different classes of labor, are void, and some of

them, it is true, hold that an eight-hour law statute is in conflict with the Constitution of the state in which the opinion is rendered. This question has been determined in this state, however, in *Byars v. State, supra,* following *Atkin v. Kansas, supra,* and the right of the state or municipality to prescribe eight hours as a day's work and to require that the current rate of wages be paid upon public work is not open to question. If, then, the state may do this by statute, or the city may do it by ordinance, there cannot be any valid reason why the same may not be done by contract. The statute expressly requires that the current rate of wages shall be paid, and the evidence in the case shows that the rate of wages fixed by the contract, to-wit, 25 cents per hour, was the current rate of wages prevailing in the city of Lawton at the time the contract was entered into; and we think that the city, in the performance of its public duty of paving its streets, had a right to prescribe as one of the terms upon which the contract should be let and the work performed that the current rate of wages then prevailing in the city should be paid to the laborers performing the work upon said streets. We are, therefore, of the opinion that the objection urged to the contract cannot be sustained.

It is also urged that the bonds were sold below par, and that by reason thereof the assessments levied by the city providing for the payment of said bonds should be enjoined. It appears that, under the original contract between the city and Shaw, the contractor, Shaw was to perform the work, and receive as pay therefor bonds of the city at par, to the amount of the work performed, and the prices to be paid by the city for said work were agreed upon in the contract between the parties thereto. Shaw was unable to construct the work according to the agreement, and an arrangement was entered into whereby Shaw

agreed to discount estimates of his work 10 per cent., and bonds were to be sold to a purchaser in Chicago, upon such estimates at a discount of 10 per cent from the par value thereof, the funds received therefrom to be paid to Shaw. Under this arrangement, the bonds were deposited in escrow with a trustee in Chicago, and as the work progressed, and estimates thereof were given by the city engineer, orders were given upon the trustee to deliver an amount of bonds not to exceed the amount of the estimate to the purchaser, and the funds derived therefrom were paid to the contractor. It is seen from the arrangement made ,that the city was not compelled to pay a larger amount for the work than originally provided for in the contract, nor was any greater assessment levied against the property of plaintiffs than otherwise would have been, had the original arrangement stood. It is conceded that the work was performed, and no complaint is urged at this time as to the character of the work, and the trial court expressly found there was no fraud in the arrangement whereby the bonds were sold. We are of the opinion that the sale of the bonds under the circumstances is not sufficient to warrant the court in enjoining the collection of the assessments to pay for the work which had been in fact performed.

In *Ricketts v. Sparker,* 77 Ind. 371, the Supreme Court of Indiana considered a similar question, and held that a sale of the bonds below par would not render the assessment void. We quote from the opinion as follows:

"Howard county issued　*　*　*　bonds and applied the avails of such sale to the construction of a free gravel road. To provide for the payment of these bonds, a tax was assessed upon adjacent lands.　*　*　*　Appellants are the owners of lands upon which the tax was assessed, and brought this action to enjoin the county officers from collecting the taxes assessed by the board of commissioners.　*　*　*　The complaint avers that the bonds issued by the commissioners were sold at less than par.

The answer for this ground for relief is substantially as follows: That there was received from the sale of the bonds   *   *   *   $750 less than their face; that said sum was intended, and was understood, to be a commission on the sale of said bonds; that, to make good to all parties interested in said bonds the full amount thereof, the commissioners refunded to each of the gravel roads, and to the funds set apart for their construction, a sum in excess of that named as having been allowed by way of commission. The contention of appellants is that, as the statute imperatively requires that the bonds shall not be sold at less than par, the disobedience of the statute by the commissioners vitiated the entire assessment. We do not feel called upon to decide whether the statute is directory or mandatory, or whether or not commission may be paid for selling bonds; for we think it plain that the malfeasance of the commissioners, if any there was, did not destroy the assessment. The tax was not illegal. The purpose for which it was assessed was a lawful one. The utmost that can be claimed is that the commissioners made an unauthorized use of county funds. This might, in a proper case, be grounds for complaint against the commissioners individually; but, however this may be, it certainly is not grounds for relieving taxpayers, who get the benefit of the road, from the taxes assessed for its construction."

In *Sherlock v. Winnetka*, 68 Ill. 530, which was a bill in chancery to enjoin the collection of taxes levied to pay interest on certain bonds, the court said:

"It is urged that the board of education had no power to discount these bonds when they were sold; that the rate of interest is limited by their charter to 10 per cent., whilst, when sold for $50 less than the face of each bond, and with, perhaps, seven to ten months' accrued interest, as they were dated that length of time before they were sold, the rate of interest actually paid was much more than 10 per cent. per annum. Whilst we regard this action of the board of education as unauthorized and an abuse of power, and for which they are, probably,   *   *   * liable to the extent of the loss thus incurred, that act would not render the bonds void."

In *Warren v. Henley,* 31 Iowa, 21, plaintiff sued to enjoin the collection of assessments for street paving, and one of the grounds urged was that the actual cost of the improvements was 25 per cent. less than the sum assessed, the extra 25 per cent. having been added in order to make the city warrants, in which payment was made for the work, equal to cash. The relief prayed for was denied.

In *Richardson v. Lawrence County,* 154 U. S. 536, 14 Sup. Ct. 1213, 17 L. Ed. 558, it appeared that Lawrence county had issued bonds in aid of a railroad under a statute which provided that the bonds should not be sold at less than par. The bonds were in fact sold at 64 cents on the dollar to the contractor for building the road. The Supreme Court of the United States held that the right of the holder of the bonds and coupons to recover principal and interest at par was not affected by the sale as above noted.

See, also, *Bank v. Greenburgh,* 173 N. Y. 215, 65 N. E. 978; *Atchison v. Butcher,* 3 Kan. 104; *Delafield v. State,* 26 Wend. (N. Y.) 192; *Appeal of Whelen et al.,* 108 Pa. 162, 1 Atl. 88; *National Life Ins. Co. v. Board of Equalization,* 62 Fed. 778, 10 C. C. A. 637; *Greenburg v. Trust Co.,* 94 Fed. 755, 36 C. C. A. 471.

It is perhaps true that an arrangement of this kind might have been enjoined prior to the consummation thereof, at the suit of a property owner; but said arrangement having been perfected and the bonds delivered, and the proceeds from the sale thereof having been paid to the contractor in full satisfaction of the contract price for the work performed, and the city having secured its improvements at the sum stipulated in the original contract, which appeared to have been free from fraud, and in accordance with law, and no objection having been urged by plaintiff until it is sought to collect the assessments

levied to pay therefor, we cannot say that the assessments are invalid and should be enjoined for this reason.

It is claimed by defendants in error that the objections urged by plaintiffs in error, to wit, that the contract provided for payment of wages at 25 cents per hour and that the bonds were sold below par, were irregularities not going to the jurisdiction of the city to construct the improvements in question, and that the suit of the plaintiffs in error not having been commenced within 60 days thereafter, as provided by section 644, Rev. Laws 1910, they were estopped from urging these questions now. This proposition seems to be well taken. It has been held a number of times that, where a city acquires jurisdiction for the purpose of constructing public improvements and to charge the cost thereof against the property benefited in the manner provided by statute, a property owner who sits by while such work is being prosecuted, knowing that the same is being performed and that same will benefit his property, and who fails to appear at the proper time and present his objections, will not be permitted, after the work is completed, to obtain relief by injunction against assessments which have been levied upon his property to pay for the construction of the same.

In *Paulsen v. City of El Reno et al.*, 22 Okla. 734, 98 Pac. 958, it was held that the city council acquired jurisdiction by petition presented by a majority of the property owners to pave the streets in accordance with such petition, without any resolution or notice of intention so to do, and, determining the precise question here presented, Mr. Chief Justice Williams, who wrote the opinion for the court, said:

"Any irregularity that may subsequently occur in the * * * proceedings of the city council relative to said paving, there being neither any allegation nor proof of fraud, or that such irregularity worked any specific injury to the plaintiff's property rights, or to any one else simi-

larly circumstanced, or that there was reason to believe that there would have been submitted a less bid for such improvement, there is no ground for equitable intervention. *Hixon et al. v. Oneida County,* 82 Wis. 515, 52 N. W. 445; *Marth v. City of Kingfisher* [22 Okla. 602] 98 Pac. 436 [18 L. R. A. (N. S.) 1238]; Cooley on Taxation (3d Ed.) p. 1440; *Gilmore v. Hentig,* 33 Kan. 156, 5 Pac. 781; *Newman v. Emporia,* 41 Kan. 586, 21 Pac. 593."

Mr. Justice Kane, in the case of *City of Muskogee et al. v. Rambo et al.,* 40 Okla. 672, 138 Pac. 567, said:

"Under chapter 15, art. 15, Comp. Laws 1909, the passage and publication of the ordinance, of necessity, pursuant to section 989 of said act, confers jurisdiction upon the municipal authorities of cities having a population of not less than 1,000 persons to establish a sewer district and construct a district sewer therein, and to provide that the cost of such district sewer shall be apportioned against all the lots or pieces of ground in such district, exclusive of the public highways, and to levy and assess a special tax by ordinance against each lot or piece of ground within the district to pay for the construction of such sewer."

It having been already determined that the provision in the contract was not in violation of any constitutional or statutory law of this state nor contrary to any rule of public policy, and it having also been determined that the sale of the bonds in the manner complained of was at most an irregularity which perhaps might have been enjoined prior to the consummation thereof, but was not such a defect as to defeat the jurisdiction of the city in the construction of the improvements, and it having been seen that the original contract between the city and the contractor, Shaw, was a valid contract, concerning which no complaint is made, except as herein stated, and that the improvements did not cost the city more than was contemplated by the original contract, if it be conceded that the arrangement whereby the bonds were sold is void, yet, the work having been performed, the contractor

47—8

would be entitled to the bonds under the original contract, and the city would be under obligations to levy and collect the assessments to make payment thereof; and it appearing that the assessments levied upon the property of plaintiffs are not greater than they would otherwise have been, and that they have not presented their objections within the time provided by the statute, we are of the opinion that the showing made was not sufficient to entitle them to relief by injunction against the collection of the assessments according to the terms of the ordinance upon the grounds herein stated. *City of Perry v. Davis et al.,* 18 Okla. 458, 90 Pac. 865; *Kerker v. Bocher,* 20 Okla. 729, 95 Pac. 981; *Paulsen v. City of El Reno, supra; Jenkins v. Okla. City et al.,* 27 Okla. 230, 111 Pac. 941; *Lonsinger v. Ponca City,* 27 Okla. 397, 112 Pac. 1006; *Weaver v. City of Chickasha,* 36 Okla. 226, 128 Pac. 305; *Shultz v. Ritterbusch,* 38 Okla. 478, 134 Pac. 961; *City of Muskogee et al. v. Rambo et al., supra; City of Bartlesville v. Holm et al.,* 40 Okla. 467, 139 Pac. 273; *Sharum v. City of Muskogee,* 43 Okla. 22, 141 Pac. 22.

In view of the foregoing, we think there was no error committed in sustaining the motion to dissolve the temporary injunction.

Under the second proposition, that the court erred in rendering final judgment and dismissing the case, it appears that at the time of the hearing no answer had been filed by the defendants in the case, and that the matter had been submitted on the petition and motion to dissolve the injunction. A great deal of testimony was taken upon the trial, and after the hearing the court dissolved the temporary injunction and dismissed the bill. We think there was error in dismissing the case. By section 5043, Rev. Laws 1910, it is provided that actions shall be triable at the first term of court after or during which the issues therein, by the time fixed for pleading,

are or shall have been made up; and it is also provided by said section that when the issues are made up the cause shall stand for trial at such term ten days after the issues are or shall have been made up; and it is also provided even after issues are joined, and prior to the expiration of ten days, over the objection of either party, this would constitute error. *City of Ardmore v. Orr,* 35 Okla. 305, 129 Pac. 867; *Title Guaranty & Trust Co. v. Turnbull,* 40 Okla. 294, 137 Pac. 1178.

In the case of *Vallero v. Camilla et al.,* 53 Colo. 312, 125 Pac. 497, in passing upon this question, the Supreme Court of Colorado said:

"The hearing was solely upon a motion to dissolve the temporary injunction. For this reason, it was error to dismiss the bill, although the showing made justified the dissolution of the temporary writ, as plaintiff still had the right to a trial of the cause upon its merits, and to such relief as the case then made warranted."

The Supreme Court of Texas, in *Washington County v. Schultz,* 63 Tex. 32, in deciding a similar question, said:

"If the petition contained averments sufficient, if established by proof on the final hearing, to entitle appellant to the relief sought, or if it could have been amended so as to state a good cause of action, it should have been retained, when he asked that it be done, to give appellant an opportunity of proving the averments to be true, and thus obtain the relief sought."

In *Lively et al. v. Hunter,* 124 Ga. 516, 52 S. E. 544, the Supreme Court of Georgia said:

"On the hearing of a motion to dissolve and vacate a temporary injunction, the court is without jurisdiction to enter a final decree disposing of the main case on its merits."

In *Richardson v. Kittlewell,* 45 Fla. 551, 33 South. 984, the Supreme Court of Florida said:

"The further direction of the decree that the bill be dismissed was error. The cause had been at issue only six weeks, and the time for taking testimony had not expired. The complainant had a right to a final hearing after full proofs, and the bill should not have been dismissed upon motion to dissolve based upon affidavits."

The judgment of the trial court dissolving the temporary injunction is affirmed, and the cause is remanded, with directions to proceed further in accordance with this opinion, if plaintiffs in error shall desire further to prosecute their suit.

All the Justices concur, except KANE, C. J., and SHARP, J., not participating.