## GENERAL CONST. CO. v. CONNALLY, Com'r of Labor of Oklahoma et al.

(District Court, W. D. Oklahoma. November 24, 1924.)

No. 678.

*(Syllabus by the Court.)*

**1. Constitutional law ⚖⊸275(2)—Criminal law ⚖⊸13—State statute prohibiting payment of less than current rate of wages to laborers on state contracts held violative of due process clause.**

That portion of section 7255 of the Compiled Oklahoma Statutes of 1921 providing for the payment of "not less than the current rate of per diem wages in the locality where the work is performed" to laborers engaged in the execution of contracts with the state, together with section 7257 of the Compiled Oklahoma Statutes of 1921, providing a punishment for violation of the first-mentioned statute, since it sets up no ascertainable standard of guilt, is repugnant to the Fourteenth Amendment to the Constitution, which requires due process of law, and that persons accused of crime shall be adequately informed of the nature and cause of the accusation.

**2. Constitutional law ⚖⊸258—Due process of law requires criminal statutes to have definite, ascertainable standards of guilt.**

Due process of law involves the requirement that criminal statutes have definite, ascertainable standards of guilt.

Davis, District Judge, dissenting.

In Equity. Suit by the General Construction Company, a corporation, against Claude Connally, Commissioner of Labor of the State of Oklahoma, and others, to enjoin defendants from fixing a current rate of per diem wages to be paid its employees engaged in public improvements, and from proceeding against the plaintiff criminally for failure to comply with section 7255 of the Compiled Oklahoma Statutes of 1921. Decree for plaintiff.

Charles E. McPherren and Irvin L. Wilson, both of Oklahoma City, Okl., and Kittie C. Sturdevant, of Shawnee, Okl., for plaintiff.

George F. Short, Atty. Gen., and C. W. King and Baxter Taylor, Asst. Attys. Gen., all of Oklahoma City, for defendants.

Before KENYON, Circuit Judge, and DAVIS and KENNAMER, District Judges.

KENNAMER, District Judge. This case involves the validity, under the Constitution of the United States, of certain portions of the statutes of Oklahoma, being that portion of section 7255 of the Compiled Oklahoma Statutes of 1921, providing:

" * * * Further, that not less than the current rate of per diem wages in the locality where the work is performed shall be paid to laborers, workmen, mechanics, prison guards, janitors in public institutions, or other persons so employed by or on behalf of the state, or any county, city, township, or other municipality, and laborers, workmen, mechanics, or other persons employed by contractors or subcontractors in the execution of any contract or contracts with the state, or with any county, city, township, or other municipality thereof, shall be deemed to be employed by or on behalf of the state, or of such county, city, township, or other municipality,"

—and section 7257 of the Compiled Oklahoma Statutes of 1921, as follows:

"Any officer of the state, or of any county, city, township, or other municipality, or any person acting under or for such officer, or any contractor with the state, or any county, city, township, or other municipality thereof, or other persons violating any of the provisions of the two preceding sections, shall for each offense be fined in any sum not less than fifty dollars, nor more than five hundred dollars, or punished by imprisonment of not less than three months nor more than six months. Each day such violation continues shall constitute a separate offense."

[1] I am of opinion that a statute providing "that not less than the current rate of per diem wages in the locality where the work is performed shall be paid to laborers," etc., "employed by or on behalf of the state or any subdivision thereof," together with the section providing punishment by fine and imprisonment for a violation, contravenes the Fourteenth Amendment to the Constitution of the United States, in that it deprives the complainant of his liberty and property without due process of law. It is obvious that the statutes requiring the payment of current wages and providing penalties for the violation thereof are so vague and indefinite as to render it impossible for any person to know or to be able to determine in advance for what acts he may be arbitrarily required to answer for a criminal prosecution. The statutes involved, in effect, delegate to the labor commissioner of the state of Oklahoma the arbitrary power to determine what acts of a contractor working under a contract with the state or municipality he conceives to be a violation of the statute justifying a criminal prosecution. The statute wholly fails to provide an ascertainable standard by which a contractor may determine in advance what is the current wage in any given locality.

There is a clear distinction between an indefinite civil statute and an indefinite criminal statute. This distinction has been recognized by the Supreme Court of the United States. In Edgar A. Levy Leasing Co. v. Siegel, 258 U. S. 242, 42 S. Ct. 289, 66 L. Ed. 595, an indefinite state statute was upheld, it being civil; while in International Harvester Co. of America v. Commonwealth of Kentucky, 234 U. S. 216, 34 S. Ct. 853, 58 L. Ed. 1284, a penal or criminal statute of Kentucky was held unconstitutional because of its indefiniteness. The basis for this distinction is evident. It is of a more serious matter to deprive a man of his liberty on a prosecution based upon a vague and indefinite statute than to deprive him of a property right alone. The deprival of one's personal liberty constitutes sufficient justification for such a distinction. Common justice demands that, before a person may be deprived of his liberty by means of a criminal prosecution, he must have been able to comprehend and to know in advance that, if he commits certain acts, such acts will violate the provisions of a penal statute, plain and definite in its statements.

The authorities support the rule that a statute creating an offense must use language which will convey to the average mind information as to the act or fact which it is intended to make criminal. United States v. Brewer, 139 U. S. 278, 11 S. Ct. 538, 35 L. Ed. 190. In the case of Oklahoma Operating Co. v. Love et al., Composing the Corporation Commission of Oklahoma, 252 U. S. 331, 40 S. Ct. 338, 64 L. Ed. 596, the Supreme Court of the United States, in an opinion rendered by Mr. Justice Brandeis, held that the order of the Corporation Commission, limiting the rates of the Oklahoma Operating Company, engaged in the laundry business, and the attempted enforcement of said order by fine and imprisonment, and making each day's refusal to obey said order a separate offense, was violative of the Fourteenth Amendment to the Constitution of the United States. It was held in this case that the only judicial review of an order fixing rates possible under the laws of a state was that arising in proceedings to punish for contempt.

The reasoning in this case is particularly applicable to the case at bar. Mr. Justice Brandeis pointed out that by "boldly violating an order a party against whom it was directed may provoke a complaint; and if the complaint results in a citation to show cause why he should not be punished for contempt, he may justify before the Commission by showing that the order violated was invalid, unjust or unreasonable. If he fails to satisfy the commission that it erred in this respect, a judicial review is opened to him by way of appeal on the whole record to the Supreme Court. But the penalties which may possibly be imposed if he pursues this course without success are such as might well deter even the boldest and most confident."

In the instant case a person desiring to contract for labor may in the best of faith and with the purest of motives endeavor in his own mind to determine what constitutes the current wage of a community, and bid upon a contract for public improvements, and subsequently discover for the first time, through the whimsical notion or arbitrary power exercised under the statute by the labor commissioner, that all of his acts are by such commissioner determined (who in actual effect has exercised legislative power) and denounced as a crime. It is for the protection of the citizens against such arbitrary action that the people have safeguarded, through the provisions of the Constitution, the liberty of the citizens from such oppressive and arbitrary acts.

In United States v. Cohen Grocery Co., 255 U. S. 81, 41 S. Ct. 298, 65 L. Ed. 516, 14 A. L. R. 1045, the Supreme Court of the United States held that the Food Control Act of August 10, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛l–3115⅛r), as amended October 22, 1919 (Comp. St. Ann. Supp. 1923, §§ 3115⅛e, 3115⅛ff), in denouncing and in attaching a penalty of fine and imprisonment to the making by any person of "any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries," was violative of the Fifth and Sixth Amendments to the Constitution. And the Supreme Court of the United States, in International Harvester Company of America v. Commonwealth of Kentucky, 234 U. S. 216, 34 S. Ct. 853, 58 L. Ed. 1284, held that a state statute of Kentucky was void as contrary to the Fourteenth Amendment. However, it was held, in so far as the statute involved threw the risk upon the parties charged of rightly estimating what is an undue restraint of trade, it was valid, but was invalid for the reason that it compelled a man to guess what the fair market value of "commodities manufactured or sold by him would be under other than existing conditions."

It is submitted that "current wage in a community," as used in the statute under consideration, is no more definite than the "fair market value of the commodity"; is no more definite than "real value," which was held too indefinite for a penal statute in Collins v. Kentucky, 234 U. S. 634, 34 S. Ct. 924, 58 L. Ed. 1510; nor more definite than "unjust or unreasonable," as used in the Cohen Case, supra; nor is it more definite than "to 'provide * * * upon reasonable request and reasonable notice, at complainants' respective refineries, tank cars in sufficient number to transport said complainants' normal shipments in interstate commerce,'" as employed in United States v. Pennsylvania R. R. Co., 242 U. S. 208, 37 S. Ct. 95, 61 L. Ed. 251.

It is quite impossible to discuss the phrase "due process of law." Its meanings are varied according to the authorities, and much has been written concerning it. It seems, however, that "due" means "reasonable," and whether there is reasonableness in each particular case demands an appeal to the circumstances. It must be observed, as was held in Re Ziebold (C. C.) 23 F. 791, that, "if it has no broader meaning than process prescribed by act of the Legislature, it is the end of the case. But such a construction would render the constitutional guaranty mere nonsense, for it would then mean no state shall deprive a person of life, liberty, or property, unless the state shall choose to do so." The authorities support the rule that "due process of law" and "law of the land" have a broad and comprehensive meaning, and that their origins are in the great Bill of Rights.

In Ex parte Virginia, 100 U. S. 346, 25 L. Ed. 676, the court said: "They have reference to actions of the political body denominated a state, by whatever instruments or in whatever modes that action may be taken. A state acts by its legislative, its executive, or its judicial authorities. * * * The constitutional provision, therefore, must mean that no agency of the state, or of the officers or agents by whom its powers are exerted, shall deny to any person within its jurisdiction the equal protection of the laws. Whoever, by virtue of public position under a state government, deprives another of property, life, or liberty without due process of law, or denies or takes away the equal protection of the laws, violates the constitutional inhibition."

Much stress was laid upon those cases heretofore decided involving the statutes in question, but an examination of these cases discloses that the precise question to be here determined has not been passed upon by the courts. In Byars v. State, 2 Okl. Cr. 481, 102 P. 804, Ann. Cas. 1912A, 765, the statute in question was involved; there being a conviction for employing and working employees more than eight hours per day. The point of unconstitutionality, because of uncertainty of the criminal provisions of the statute, was not raised and was not considered by the court. However, the court considered the case of Ryan v. City of New York, 177 N. Y. 271, 69 N. E. 599, as an authority for sustaining that part of the Oklahoma statute providing for pay of the current wage. It must be observed that the New York case does not set forth a statute which makes it penal or criminal not to pay this wage. The Oklahoma case only involved the validity of the statute in so far as it limited the hours of employment.

In State v. Tibbetts, 205 P. 776, the Criminal Court of Appeals of Oklahoma upheld the Oklahoma statute, which was attacked as being void because of uncertainty; the attack being directed at the word "locality," to which the court gave a relative and variable meaning. No objections to the statute were considered by the court which have been raised in the case at bar.

Norris v. City of Lawton, 47 Okl. 213, 148 P. 123, did not present for determination the question raised in the instant case. The question before the court was whether a city or municipality was authorized to provide a minimum wage to be paid laborers as a term of a contract for public improvements, and the court held that it was within the power of the state or municipality to so contract. The questions presented in the case at bar were not considered by the court in the case of Norris v. City of Lawton, supra.

No question arises here as to the power of a state, consistently with the federal Constitution, to provide for an eight-hour day for employees engaged in state undertakings. The case of Atkin v. Kansas, 191 U. S. 207, 24 S. Ct. 124, 48 L. Ed. 148, was strongly urged as an authority for upholding the validity of the statute under consideration, but it is indeed clear that the Atkin Case is not controlling, because it was stipulated in that case that the current wage was paid, and the only question determined by the case was the eight-hour provision of the law.

[2] It seems that, if the statute herein considered can be sustained, the legislative branch of the government has lost its use-

fulness in defining crime. Such a statute makes it possible for the Legislature to delegate its powers to numerous agents, who may go out and investigate the conduct of each citizen, and determine what acts of a citizen constitute a crime, and upon such determination may institute criminal prosecutions against him. Clearly this is not due process of law, because due process of law involves the requirement that criminal statutes have definite ascertainable standards of guilt.

KENYON, Circuit Judge, concurs.

DAVIS, District Judge, dissents.