José Carro Rivera, Plaintiff and Appellant, *v.* Sergio Cuevas, Defendant and Appellee. Tomás Carro, Plaintiff and Appellant, *v.* Same, Defendant and Appellee.

Nos. 8706 and 8707.    Argued February 2, 1944.—Decided June 2, 1944.

*Leopoldo Tormes García* for appellants.    *M. Rodríguez Ramos, Acting Attorney General,* and *G. Benítez Gautier, Deputy Attorney General,* for appellee.    *Raúl Méndez* for L. Metcalfe Walling, Administrator of the Wage and Hour Division of the United States Department of Labor, as *amicus curiae.*

Mr. Chief Justice Travieso delivered the opinion of the court.

The two aforementioned cases were initiated in the District Court of Ponce and later transferred to that of San Juan and submitted and jointly decided by judgment on the pleadings when the demurrers interposed against the complaints in both cases were sustained.    The complaints not being susceptible of amendment, the inferior court dismissed the same, imposing the costs upon the plaintiffs.    The latter appealed in both cases.

The plaintiff-appellant contractor and the Superintendent of Public Works entered into a contract for the construction of a bridge over the Añasco River plus 5557 meters of asphaltated highway, for the price of $197,362.25.    Said contract was awarded to the plaintiff through public bid by the Department of the Interior on June 28, 1940.

Clause 6 of the contract between the parties provides "that the General Specifications for the construction of in-

sular public works, approved in 1902 and amended in 1931, the Specifications, the Special Provisions, the Advertisements, the Instructions to Bidders, the Plans of the Project, the Bonds for the Execution of the Work, and the Payment Bond, are part of this Contract."

In the advertisements for the bids, authorized by the Commissioner of the Interior, it was stated that the minimum wage rate per hour for the different classifications of work, and also the hours of work and conditions of employment, would be set forth in the "Special Provisions" of the itemized proposal for the project. In said advertisements, after what is above stated, the following appeared:

"6. In the execution of the work under this contract fulfillment by the contractor of the standards as regards hours of work and minimum wages per hour for unskilled workers prescribed by the Fair Labor Standards Act of 1938 approved June 25, 1938 (Public No. 708, 75th Congress) shall be required".

Among the "Special Provisions" to which clause 6 of the contract refers, appears No. III entitled "Wages, hours of work, and conditions of work." After defining the different classes of workmen it says:

"The minimum wage payable to all skilled laborers employed under this contract shall be $0.10 per hour more than that paid to unskilled laborers".

"The minimum wage payable to all intermediate laborers employed under this contract shall be $0.05 more per hour than that paid to unskilled laborers".

"The minimum wage payable to all unskilled laborers employed under this contract shall be that prescribed by the Fair Labor Standards Act of 1938, approved June 25, 1938".

Section 12 of the General Specifications for the Construction of Public Works approved in 1902 and amended in 1931 imposes upon the contractor the obligation to pay weekly to his laborers the entire amount of wages earned and to pay them in cash; and it provides that if this obligation is not

fulfilled the Superintendent of Public Works ''shall proceed to prepare, on official forms, a pay roll of pending wages, and shall submit the same to the Commissioner of the Interior for approval and payment'' out of the funds appropriated for the work which is the object of the contract. By the same Section the Commissioner of the Interior is authorized to deduct the amount of such pay roll out of the sum certified monthly in favor of the contractor for the work done; and if this amount is insufficient to cover the pay roll, the resulting deficit may be deducted from the subsequent certifications or from the 10 per cent withheld until the termination of the work.

The same General Specifications (Subsection 7, paragraphs 1, 14, and 17) provide that the contractor shall at all times observe and comply with the laws, ordinances and municipal regulations, both federal and insular, which relate to the execution of the work; and that no laborer employed in the work shall be compelled to work more than 8 hours per day, except in cases of extraordinary emergency.

By clause 6 of the contract it is stipulated that monthly payments shall be made to the contractor, through estimates certified by the Commissioner of the Interior and in proportion to the materials employed and work done, 10 per cent of each payment to be withheld until the project has been finished and accepted and all requisites complied with in accordance with the General Specifications; that no employee shall be compelled nor allowed to work more than 8 hours a day; and that said employees, laborers, and mechanics shall receive no less than a dollar for each day of legal work.

In the complaint it is alleged that during the months of May and June 1941, taking into account the material put in the work and the work done, the defendant failed to certify to the Auditor and the Treasurer of Puerto Rico an amount greater than $1,500, plus the 10 per cent that he had the right to withhold; that the amount that the defendant failed

to certify was certified by the defendant to be paid directly to laborers employed by the plaintiff during May and June, 1941, who did work on the said .project which was not covered by the Fair Labor Standards Act of 1938; that those laborers who had contracted with the plaintiff for the wages that they were to receive, never worked more than eight hours per day and never received less than one dollar as their wages for each legal day of work.

The plaintiff contends that said actions of the defendant are illegal and *ultra vires* for the following reasons:

(*a*) Because the plaintiff has faithfully complied with all the obligations imposed upon him by the contract.

(*b*) Because the Fair Labor Standards Act is not applicable to the work covered by the contract, since the laborers employed in said work were not included in the definition of the term "person" employed in Subsection A of §3 of the Federal Act. The defendant likewise is not included within the definition of the term "employer" set forth in Subsection D of §3 of the same Act.

(*c*) Because the plaintiff has not established any "industry," does not manufacture any "article" does not produce anything within the term "produced," and does not sell anything, which would make applicable to him the provisions of Subsections H, I, J, and K of §3 of the Federal Act.

(*d*) Because the plaintiff has not established any commerce or industry to produce articles of commerce and is therefore not under any duty to pay salaries in accordance with Subsection A of §6 of the Fair Labor Standards Act.

(*e*) Because the plaintiff not being engaged in commerce or the production of articles of commerce is not under any duty to comply with the minimum hours of work provided for in Subsection A of §7 of said Act, in so far as the said contract is concerned.

(*f*) Because none of the laborers employed by the plaintiff performed any work covered by the terms or definitions

of §3 of the Fair Labor Standards Act. Even when one of the conditions of the contract was to the effect that the contractor shall comply with the provisions of said Act, this does not mean that said provisions shall be applicable to labor or activities not covered by the said Act.

In the prayer of the complaint the plaintiff asked that judgment be entered declaring null the action of the defendant with regard to the certifications corresponding to the months of May and June, 1941, and succeeding months; and that the defendant be ordered to pay to the plaintiff the amounts withheld in excess of 10 per cent, plus costs and attorney's fees.

The Administrator of the Wage and Hour Division of the Department of Labor intervened in the proceedings as *amicus curiae* to contend that the allegations of the complaint were not sufficient.

In an extensive and well-reasoned opinion the lower court decided, against the contentions of the defendant and of the *amicus curiae,* that even though Highway No. 2 is an instrument of interstate commerce just as any railroad dedicated to the same purpose would be, the project then being performed by virtue of the contract between the plaintiff and the defendant was not covered by the provisions of the Federal Act, since it simply involved the construction of a new bridge to replace the old one, which was not being used nor had been used as yet in interstate commerce. The court decided that the case applicable herein was not *Pedersen* v. *Delaware, L. & W. R. Co.,* 209 U. S. 146, 57 L. ed. 1125, but the cases of *McKee* v. *Ohio Valley Electric Ry. Co.,* (W. Va.) 88 S. E. 616; *Raymond* v. *Chicago M. & St. P. R. Co.,* 243 U. S. 43, 61 L. ed. 583; and *N. Y. Central R. Co.* v. *White,* 243 U. S. 188, 61 L. ed. 667, in which it was held that a laborer can not be considered as engaged in interstate commerce when the work in which he is working is a new project which has not yet been dedicated to the public use.

We shall not consider or decide whether or not the laborers employed in the repairs of insular roads, over which articles of commerce are transported, are potected by the Federal Wage and Hour Act, since the question is not involved in the present case.

The lower court sustained the demurrer because, in accordance with the express terms of the contract, the plaintiff agreed to pay his laborer the same scale of wages fixed by the Federal Fair Labor Standards Act.

Exhibit "A" of the plaintiff discloses that the advertisement for the bid dated June 6, 1940, informed the contractor that the minimum wage rate for the different classifications of work would be set forth in the "Special Provisions" contained in the itemized proposal for the project; and also informed him expressly that in the execution of the work the contractor would be required to comply with the standards regulating hours and minimum wages prescribed by the Fair Labor Standards Act.

Exhibit "A" contains the "Special Provisions for Projects Financed with Federal Relief Funds available for the Island of Puerto Rico and initially advertised subsequent to March 21, 1939". By paragraph III of the "Special Provisions," after an enumeration of the different classifications of work, it is expressly provided that all unskilled laborers employed under this contract shall be paid the minimum wage fixed by the Fair Labor Standards Act of 1938; and that the contractor would be also required to comply with the provisions of said Act with regard to the hours of work.

Among the special provisions are the following:

"These provisions shall be applicable to work done by the contractor with the same organization and with the aid of laborers under his immediate supervision and to all work done under a subcontract".

"    *        *        *        *        *        *        *

"The minimum wages herein specified shall be exclusive of any charges whatsoever by reason of medical examination, medical fees or insurance, except when they are specifically required by State law. No individual employed in this project, in a position that is not administrative, shall be paid less than the minimum rate for unskilled laborers".

In the "Special Provisions" the regulations promulgated by the Secretary of the Treasurer and the Secretary of the Interior in accordance with the provisions of the Act entitled Public Act No. 324, 73rd Congress, approved June 13, 1934 (48 Stat. 948), are inserted and expressly made part of the contract. Section 2 of said Regulations imposes upon every contractor, working on projects of the United States or on projects financed in whole or in part by loans or grants of the United States, the obligation to file every week an affidavit with regard to the salary paid to each employee during the previous week.

The lower court did not err in holding that the plaintiff expressly contracted to pay his laborers the same scale of wages prescribed by the Federal Act, and that said agreement is valid and must be complied with. *Morris* v. *City of Lawton,* 148 Pac. 123; 43 Am. Jur. 794, par. 51; §1044 of the Civil Code.

The judgment will be affirmed.