José Carro Rivera, demandante y apelante, *v.* Sergio Cuevas, demandado y apelado. Tomás Carro, demandante y apelante, *v.* Sergio Cuevas, demandado y apelado.

Núms. 8706 y 8707.—*Sometidos:* Febrero 2, 1944. *Resueltos:* Junio 2, 1944.

*Leopoldo Tormes García,* abogado de los apelantes; *Hon. Procurador General Interino M. Rodríguez Ramos* y *G. Benítez Gautier, Procurador General Auxiliar,* abogados del apelado; *Raúl Méndez,* en representación del Sr. L. Metcalfe Walling, Administrador de la División de Salarios y Horas del Departamento del Trabajo de los Estados Unidos, como *amicus curiae.*

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

Los dos casos arriba mencionados fueron iniciados ante la Corte de Distrito de Ponce, trasladados a la de San Juan y sometidos y resueltos conjuntamente por sentencia sobre las alegaciones. Declarada con lugar en uno y otro caso la excepción previa a la demanda y no siendo las demandas susceptibles de enmienda, la corte inferior las declaró sin lugar, imponiendo las costas al demandante. Este apeló en ambos casos.

El contratista demandante y apelante y el Superintendente de Obras Públicas celebraron un contrato para la construcción de un puente sobre el Río Añasco más 5,557 metros de carretera afirmada y asfaltada, todo por el precio de $197,362.25. Dicho contrato fué adjudicado al demandante en la subasta celebrada por el Departamento del Interior en junio 28 de 1940.

La controversia entre las partes, es en síntesis, la siguiente:

La cláusula 6 del contrato entre las partes dispone "que las Condiciones Generales para la Contratación de Obras

Públicas Insulares, aprobadas en 1902 y enmendadas en 1931, las Especificaciones, las Disposiciones Especiales, los Anuncios, la Memoria, las Instrucciones a los Postores, los diseños del proyecto, la fianza para la ejecución de la obra, y la Fianza de Pago, forman parte de este Contrato''.

En los anuncios para la subasta, autorizados por el Comisionado del Interior, se hizo constar que el tipo mínimo de salario por hora para las varias clasificaciones del trabajo, así como las horas de trabajo y condiciones del empleo, se harían constar en las "Disposiciones Especiales" de la proposición detallada para el proyecto. En dichos anuncios aparecía a continuación de lo que precede, lo siguiente:

"6. En la ejecución de las obras bajo este contrato se exigirá el cumplimiento por el Contratista con las normas en cuanto a horas de trabajo y salarios mínimos por hora para trabajadores no diestros (*unskilled*) prescritas por 'Fair Labor Standards Act of 1938', aprobado junio 25 de 1938 (Public No. 708, 75th Congress).''

Entre las "Disposiciones Especiales" a que se refiere la cláusula 6 del contrato, aparece la número III titulada "Salarios, horas de trabajo y condiciones del trabajo". Después de definir las distintas clases de trabajadores, dice así:

"El salario mínimo pagadero a todos los trabajadores diestros empleados en este contrato será $0.10 por hora más que el de los trabajadores no diestros.''

"El salario mínimo pagadero a todos los trabajadores intermedios empleados en este contrato será $0.05 por hora más que el de los trabajadores no diestros.''

"El salario mínimo pagadero a todos los trabajadores no diestros empleados en este contrato será el prescrito por 'Fair Labor Standards Act of 1938', aprobado junio 25, 1938.''

La sección 12 de las Condiciones Generales para la Contratación de Obras Públicas, aprobada en 1902 y enmendada en 1931, impone al contratista la obligación de pagar semanalmente a sus obreros la totalidad de los jornales devengados, en dinero efectivo; y dispone que si esta obligación no fuere cumplida, el Superintendente de Obras Públicas

"procederá a preparar, en blancos oficiales, una nómina de salarios pendientes, y la trasmitirá al Comisionado del Interior para su aprobación y pago" con cargo a los fondos asignados para la obra objeto del contrato. En la misma sección se autoriza al Comisionado del Interior para deducir el importe de la nómina así pagada, del montante de la certificación mensual expedida a favor del contratista por el trabajo realizado; y si el importe de la certificación no fuere suficiente para cubrir el de la nómina, el déficit que resulte podrá ser deducido de las certificaciones subsiguientes o del diez por ciento retenido hasta la terminación de la obra.

Las mismas Condiciones Generales (apartado 7, párrafos 1, 14 y 17) disponen que el contratista deberá en todo tiempo observar y cumplir con las leyes, ordenanzas y reglamentos municipales, insulares y federales que afecten la ejecución de las obras; y que a ningún obrero empleado en las obras se le permitirá o se le obligará a trabajar más de ocho horas por día, excepto en casos de emergencia extraordinaria.

En la cláusula G del contrato se estipula que se harán pagos mensuales al contratista, mediante estimados certificados por el Comisionado del Interior, en proporción a los materiales empleados y labor realizada, reservando 10 por ciento de cada pago hasta que la obra total haya sido terminada y aceptada y los requisitos cumplidos de acuerdo con las Condiciones Generales; que a ningún empleado se le obligará a ni se le permitirá trabajar más de ocho horas en un día; y que dichos empleados, obreros y mecánicos recibirán no menos de un dólar por cada día legal de trabajo.

En la demanda se alega que durante los meses de mayo y junio de 1941, teniendo en cuenta el material arrimado a la obra y el trabajo realizado, el demandado dejó de certificar al Auditor y Tesorero de Puerto Rico una suma mayor de $1,500, además del 10 por ciento que tenía derecho a retener; que esa suma que el demandado dejó de certificar fué certificada por el mismo demandado para ser pagada direc-

tamente a obreros empleados por el demandante durante mayo y junio de 1941, quienes realizaron trabajos en dichas obras, las cuales no están comprendidas en la Ley de Normas Razonables del Trabajo de 1938; que esos obreros quienes habían contratado con el demandante el salario que habrían de percibir, nunca trabajaron más de ocho horas por día y nunca recibieron menos de un dólar como salario por cada día legal de trabajo.

Sostiene el demandante que las actuaciones del demandado son ilegales y *ultra vires*, por los siguientes fundamentos:

(*a*) Porque el demandante ha cumplido fielmente todas las obligaciones que le impone el contrato.

(*b*) Porque la Ley "Fair Labor Standards Act" no es aplicable a las obras a que el contrato se refiere, por no estar los trabajadores utilizados en dichas obras incluídos en la definición del término "persona", empleado en el apartado "A" del artículo 3 de la ley federal. El demandante tampoco puede estar incluído en la definición que el apartado "D" del artículo 3 de la misma ley da al término "patrono".

(*c*) Porque el demandante no tiene establecida ninguna "industria", ni fabrica ningún "artículo", ni produce nada, dentro del término "producido", ni vende absolutamente nada, que pueda hacer aplicables las disposiciones de los apartados H, I, J y K del artículo 3 de la ley federal.

(*d*) Porque el demandante no tiene establecido ni un comercio ni una industria para producir artículos de comercio y no está por tanto obligado a pagar salarios de acuerdo con el apartado "A" del artículo 6 de dicha Ley sobre Normas Razonables del Trabajo.

(*e*) Porque no estando dedicado el demandante ni al comercio ni a producir artículos para el comercio, no está obligado a observar el término mínimo de horas a que se refiere el apartado "A" del artículo 7 de la citada ley, en lo que se refiere a dicho contrato.

(*f*) Porque ninguno de los obreros empleados por el demandante realiza o ha realizado actividades comprendidas en los términos o definiciones del artículo 3 de la Ley de Normas Razonables del Trabajo. Aun cuando es condición del contrato la observancia por parte del contratista de las disposiciones de dicha ley, ello no quiere decir que esas disposiciones se hagan extensivas a empleos o actividades no comprendidos en la ley.

En la súplica de su demanda el demandante pidió se dictara sentencia declarando nulas las actuaciones del demandado relacionadas con las certificaciones correspondientes a mayo y junio de 1941 y a los meses sucesivos; y que se condenara al demandado a pagar al demandante las cantidades descontadas en exceso del 10 por ciento, más costas y honorarios de abogado.

Intervino en el procedimiento, como *amicus curiae,* el Administrador de la División de Horas y Salarios del Departamento del Trabajo, para sostener también que las alegaciones de la demanda son insuficientes.

En una extensa y bien razonada opinión, la corte inferior resolvió, en contra de lo alegado por el demandado y por el *amicus curiae,* que aún cuando la carretera número 2 es un instrumento de comercio interestadual al igual que pudiera serlo cualquier ferrocarril dedicado a idénticos fines, la obra que se realizaba de acuerdo con el contrato entre el demandante y el demandado no está cubierta por las disposiciones de la ley federal porque se trata simplemente de la construcción de un puente nuevo que había de sustituir al antiguo, pero que no se estaba usando ni se había usado aún en el comercio interestadual. La corte resolvió que el caso aplicable al presente no era el de *Pedersen* v. *Delaware, L. & W. R. Co.,* 229 U. S. 146, 57 L. Ed. 1125 y sí los de *McKee* v. *Ohio Valley Electric Ry. Co.,* (W. Va.) 88 S. E. 616, *Raymond* v. *Chicago M. & St. P. R. Co.,* 243 U. S. 43, 61 L. Ed. 583 y *N. Y. Central R. Co.* v. *White,* 243 U. S. 188, 61 L. Ed. 667;

en los cuales se sostiene que un trabajador no puede consiꞏ
derarse como "engaged in commerce", empleado en el comercio interestadual, cuando la obra en que está trabajando es nueva y no ha sido dedicada todavía al servicio público.

No entraremos a considerar ni a resolver si los trabajadores empleados en la reparación de las carreteras insulares, por las cuales se transportan artículos de comercio, están o no cubiertos por la ley federal de horas y salarios, por no estar esa cuestión envuelta en el presente litigio.

La corte inferior declaró con lugar la excepción previa, basándose en que de acuerdo con los términos expresos del contrato el demandante se comprometió a pagar a sus obreros la misma escala de salarios fijados por la ley federal de Normas Razonables del Trabajo.

Del Exhibit "A" del demandante, que tenemos a la vista, aparece que en el anuncio para la subasta, fechado junio 6 de 1940, se le informó al contratista que los tipos mínimos de los salarios para las distintas clasificaciones se harían constar en las "Disposiciones Especiales", en la proposición detallada para el proyecto; y se le informó también expresamente que en la ejecución de las obras se exigiría al contratista que cumpliese con las normas en cuanto a horas de trabajo y salarios mínimos prescritas por el "Fair Labor Standards Act of 1938."

En el mismo Exhibit "A" constan las "Disposiciones Especiales para Proyectos Financiados con Fondos Federales de Ayuda Disponible para la Isla de Puerto Rico e inicialmente anunciados con posterioridad a marzo 21, 1939". En el párrafo III de esas "Disposiciones Especiales", después de enumerar las diversas clasificaciones del trabajo, se dispone expresamente que a todos los trabajadores no diestros empleados en este contrato se les pagará el salario mínimo fijado por el Fair Labor Standards Act of 1938; y que al contratista se le exigirá que cumpla también con las

disposiciones de dicha ley en cuanto a las normas de horas de trabajo.

Entre las disposiciones especiales figuran las siguientes:

"Estas disposiciones serán aplicables a todos los trabajos realizados por el contratista con su propia organización y con la ayuda de trabajadores bajo su inmediata supervisión y a todos los trabajos realizados por subcontrato."

"  *     *     *     *     *     *     *

"Los salarios mínimos aquí especificados serán exclusivos de cualesquiera cargos por examen médico, honorarios médicos o seguro, excepto en cuanto sean específicamente requeridos por la ley del Estado. A ningún individuo empleado en el proyecto, en un puesto que no sea administrativo, se le pagará menos que el tipo mínimo para trabajadores no diestros."

En las "Disposiciones Especiales" se insertan y se hacen expresamente parte del contrato, las reglas promulgadas por el Secretario del Tesoro y el Secretario de lo Interior, de acuerdo con las disposiciones de la Ley denominada "Public Act No. 324, 73rd Congress" aprobada junio 13 de 1934 (48 Stat. 948). La sección 2 de dichas reglas impone a todo contratista de obras de los Estados Unidos o de obras financiadas en todo o en parte con préstamo o concesiones de los Estados Unidos, la obligación de presentar cada semana un *affidavit* con respecto a los jornales pagados a cada empleado durante la semana anterior.

No erró la corte inferior al sostener que el demandante se comprometió expresamente a pagar a sus trabajadores la misma escala de salarios fijados por la ley federal, y que esa estipulación es válida y debe ser cumplida. *Norris* v. *City of Lawton*, 148 Pac. 123; 43 Am. Jur. 794, parr. 51; art. 1044 del Código Civil.

*La sentencia recurrida debe ser confirmada.*